WOLFORD ET AL. *v.* WILLIAMS.

[70 South. 823.]

1. DRAINS. *Swamp land districts. Organization.*

Where a petition for the establishment of a swamp land district was filed in January, 1912, under Code 1906, section 371, the board of supervisors retained jurisdiction of the proceedings and had the right to complete the organization of the district under that law, notwithstanding the fact that before such completion, the code section was amended by Laws 1912, chapter 207, which changed the mode of procedure.

2. DRAINS. *Swamp land districts. Injunctions.*

Where landowners were legally notified of proceedings for the establishment of a swamp land district and failed to appeal from the decision of the board of supervisors, they cannot enjoin the collection of taxes due on such swamp land district on the ground of irregularity in the proceedings.

APPEAL from the chancery court of Calhoun county. HON. J. G. McGOWEN, Chancellor.

Suit by R. V. Wofford and others against W. T. Williams. Tax collector of Calhoun county. From a decree for defendant, complainants appeal.

This is an appeal from the chancery court of Calhoun county. The appellant R. V. Wofford, and many other land holders along Topashaw creek in Calhoun county, where complainants, and W. T. Williams, sheriff and tax collector of said county, was the defendant to the original bill filed in the chancery court of that county. The original bill sought to enjoin the tax collector from proceeding to collect taxes, claimed to be due on the swamp land drainage district in Calhoun county, known as Topashaw swamp land district No. 1, assessed against the same for drainage purposes; and on the same day the bill was filed the injunction issued. A demurrer, filed to the original bill, was sustained with leave granted to claimants to file an amended bill. On December 7, 1914, the claimants filed

their amended bill, upon which bill the case was finally disposed of.

The amended bill set out that all the complainants, with the exception of one, were residents of Calhoun county, and that all of them were taxpayers in Calhoun county; that they are the owners of certain lands described in the bill of complaint; and that said lands are embraced in and composed in part what is known as Topashaw swamp land drainage district in Calhoun county. The bill then charges that an order of the board of supervisors, dated June 4, 1912, establishing the said district, and all other proceedings connected therewith, were null and void and of no effect, and set out the following grounds upon which complainants base their contention that such proceedings were null and void:

"(1) That there were no notices to landowners of said district given, as required by law, anterior to the attempted formation and organization of the said district. That there was no petition on file setting forth any necessity for the formation and organization of any district comprising or embracing any of petitioners' land at the time of the attempted organization of said district; nor was there any petition on file asking for the survey of any overflowed land along any creek for the reclamation of any swamp or overflowed land for agricultural or sanitary purposes.

"(2) That there was no petition on file, as required by law, at the time of the attempted organization of said district, setting forth the necessity for same, nor the approximate description of the land to be included therein, nor the names of the landowners, nor the post office address of such owners.

"(3) That there was no publication or notice of any kind given to the landowners of any proposed swamp land district embracing said land as required by law."

The bill of complaint then set up that the matters and things as to the petition and notice or publication were jurisdictional and constituted a condition precedent to the

organization and formation of the swamp land district then being organized. The bill of complaint further sets out that on the 31st day of July, 1912, upon a petition of the commissioners of said district, appointed by the board of supervisors, the board of supervisors of Calhoun county, at its regular August, 1912, meeting, ordered that on the 3d day of October, 1912, the day of the regular meeting of the board for that month, the hearing of the said petition be set, and that citation be issued, as required by section 383 of the Code of 1906, to all parties in interest to appear at that meeting of the board. This notice, according to the allegations of the bill, was inserted in a paper published in Calhoun county, called the Dixie Herald, and addressed to all persons having or claiming any interest in the lands in Topashaw swamp land drainage district in Calhoun county. The bill then charges:

That the notice is insufficient because it contained the ''names of none of the owners of the land sought to be placed in said Topashaw swamp land district; that it contained no description of any of the lands in said district; that the said publication contained no reference to any of the purposes for which the said bonds were to be issued; that there was nothing in said notice on its face that would have put a person upon notice, that is to say, any particular persons with reference to any contemplated procedure in said so-called swamp land district matter; that a copy of the above notice and an affidavit of D. P. Hodge, one of the commissioners, with reference to the mailing of the above notices by registered mail to the various parties, was filed on the 17th day of August, 1912, with the clerk of the board of supervisors; and that the notice and publication last mentioned was the first notice of publication that was ever given or made in connection with either the formation, organization, or issuance of the bonds in said swamp land district matter.''

It was also alleged in the bill that after the publication of the notice above mentioned, and before the matter of

the bond issue had been acted upon, the board of supervisors struck from and took out of the "so-called" district about two hundred acres of land; and that at the October meeting, the time when the petition was set for hearing, the matter was continued by an order of the board until the 6th day of November. It was alleged that at that meeting another twenty acres of land, "which had been previously attempted as above set forth to be incorporated in said so-called district," was taken out of and struck from the district; that the matter of the bond issue was again continued until the next regular meeting of the board; that, at the December meeting to which the bond issue matter had been continued, another order was entered continuing the matter until the January, 1913, meeting of the board; and that at the January, 1913, meeting of the board the petition came on for hearing, asking for the issuance and sale of bonds in the Topashaw swamp land district, and the board ordered the issuance and sale of forty-two thousand, five hundred dollars worth of bonds, with interest coupons attached. The bill then charges that, for the reasons set out above, and again enumerating them, the issuance and the sale of the bonds was illegal, null, and void. The bill further alleges that the bonds were offered for sale and bought by the Bank of Derma, but that the sale was never in fact consummated because the attorneys of the bank refused to approve the regularity of the bond issue; and that, after having failed to dispose of the bonds, the commissioners and their attorneys petitioned the board of supervisors as follows:

"That for the purpose of removing all clouds upon legality of the bonds issue in this cause, it is expedient that a notice be given for further hearing of said cause for the purpose of ratifying and approving all acts of this board with reference to the exclusion of certain lands from said district and changing the details of the form, maturity, etc., of the bonds to all persons interested in said district.

"The premises considered, petitioners pray that Monday, the 1st day of September, 1913, at 10 o'clock a. m. be fixed as a time for the hearing of objections to such actions of the board, and that upon the hearing the said board pass all orders that may be necessary for the purpose of ratifying and approving all acts heretofore done in this cause, and pass further orders carrying out the issuance and sale of bonds of said district in the sum of forty-two thousand and five hundred dollars, in anticipation of the levy and collection of a special tax against the land in said district in the sum of forty cents per acre per annum for the years 1913 to 1938 inclusive, and forty-five cents per acre per annum for the years 1939 to 1943 inclusive, and that the clerk of this board cause three weeks' notice to be given by publishing a copy of said notice once a week for three weeks in the Calhoun Monitor, a weekly newspaper published in said county, and by mailing a copy of said notice within five days after the first publication thereof to all parties owning lands in said district, as shown by the papers on file in this cause by registered mail, and posting notices at the door of the courthouse of said county, and in at least three other public places in said county, directed to all persons having or claiming any interest in the lands in Topashaw swamp land district in Calhoun county."

And acting upon said petition at the August, 1913, meeting of the board of supervisors, the bill of complaint alleges that an order was issued fixing Monday, the 1st day of September, 1913, as a time for hearing objections to the action of the board in all of the previous proceedings, at which time it was proposed by said order that the board pass such orders as may be necessary for the purpose of ratifying and approving all acts theretofore done and such as were deemed necessary for carrying out the issuance and sale of the bonds of the said district in the sum of forty-two thousand, five hundred dollars, and in anticipation of the levy and collection of a special tax against the lands in said district; and the clerk was or-

dered to cause three weeks' notice of such hearing to be given by publishing a copy of said notice once a week for three weeks in the Calhoun Monitor, a weekly newspaper published in said county, and by mailing a copy and notice within five days after the first publication thereof to all parties owning land in the said district, as shown by the papers on file in said cause, and to such other parties as they may have been advised had purchased land therein or now owned land therein, by posting at the door of the courthouse, and at least three other public places in the county, a copy of the notice. And it is charged that all the acts of the board in giving notice as set out above, and attempting to ratify and confirm the prior acts of the board in reference to the said issuance and sale of said bonds, and all other matters in the order of the board of August, 1913, were illegal, null, and void; and, also, an order at the regular September, 1913, meeting of the board passed in pursuance of the order of August, 1913, ratifying and confirming all things that had been previously done on the matter of the bonds and ordering the issue and sale of the bonds, was null and void.

There was a prayer that the injunction issued on the original bill be retained, and that upon final hearing a perpetual injunction be issued, "enjoining and restraining the sheriff and tax collector of said county from selling said lands for the purpose of paying said illegal bonds or paying any other expense incident to the said illegal and proposed 'Topashaw swamp land district in Calhoun county,' and further declaring all the orders of said board with reference to the formation and organization of said so-called swamp land district in Calhoun county and all the proceedings with reference to the issuance and sale of the bonds and coupons, as well as all proceedings with reference to the formation and organization with reference thereto, to be null and void."

A demurrer was filed by the defendant tax collector, setting up the following causes of the demurrer, to wit: (1) Because the said bill is multifarious; (2) because of

the want of equity in said bill; (3) and because said bill is insufficient in law and in substance. A motion was made to dissolve the temporary injunction, and another motion was made suggesting and claiming reasonable attorneys' fees and damages, and ten per cent. on the amount involved.

A decree was rendered sustaining the demurrer and the motion to dissolve the injunction and decreeing against the complainants and their bondsmen in the sum of one thousand, three hundred and forty-three dollars, and sixty-nine cents taxes, and ten per cent, damages thereon in the amount of one hundred and thirty-four dollars and thirty-six cents, making a total amount of one thousand, four hundred and seventy-eight dollars and five cents, with interest at the rate of six per cent. per annum thereon from the date of the decree until paid, together with all costs; and, from this decree, complainants appeal to this court.

POTTER, J., delivered the opinion of the court.

(After stating the facts as above.) It will be noted that the original petition to the board of supervisors for the establishment of the proposed Topashaw swamp land district in Calhoun county was filed on the 3d day of January, 1912, under section 371, Code 1906. The requirements of this section were all complied with when the petition was filed. After the petition was filed, but before the organization of the district had been completed, the legislature passed an act amending section 371 of the Code of 1906. This act was passed March 16, 1912 (Laws 1912, p. 284). It is contended by the appellant that this act was intended as a substitute for section 371 of the Code, and that for all purposes section 371 was repealed. And it is contended that when the act of March 16, 1912, became a law, the board of supervisors should have disregarded all the proceedings had up until that time; that the persons desiring to create the district

should have started anew; that the board could declare a district established, acting under the provisions of section 374 only when it should appear that all the provisions of the preceding section as they existed at the time the district was to be established had been complied with. In our opinion, however, the jurisdiction having already attached before the section of the Code was amended was not divested by the amendment of the section.

"Where one or more sections of a statute are amended in the mode prescribed by the Constitution, the amended sections cease to exist, and the sections as amended are, in effect, incorporated into the original act; but where the new law is a substantial re-enactment of the old, merely changing modes of precedure, but not changing the tribunal or the basis of the right, and where it takes effect simultaneously with the repeal of the old, it must be presumed, even without an express saving clause, that the legislature intended that proceedings instituted under the old law should be carried to completion under the new." *Mayne* v. *Board of Com'rs of Huntington County,* 123 Ind. 132, 24 N. E. 80.

Being in court, it was the duty of the complainants in this case to come before the board of supervisors and object to such steps as they believed were unlawful; and if such proceedings were not regular, and orders were made by the board of supervisors in furtherance of the purposes of this drainage district which they believed to be irregular, the right of appeal to the circuit court from such order was granted them by statute.

Before the bonds were actually issued and sold, it appears that every landowner was cited to appear to make objections to any and all irregularities that might have existed in any of the previous proceedings of the board, and in that notice all persons in the district were actually notified in compliance with all the provisions of the amended statute. It further appears that, at a regular time named in the notice, the board proposed to reissue

the bonds in question. The majority of the complainants, if not all of them, appeared at this meeting and protested against the action of the board; and time was granted them within which to file a bill of exceptions and appeal to the circuit court.

This idea was abandoned, and an injunction was sought restraining the collection of taxes in lieu thereof. In our opinion, the action of the chancellor in sustaining the demurrer to complainants' bill for injunction was correct. At the most, the proceedings of the board of supervisors, after the passage of the amendatory act of 1912, were irregular, and the complainants and all other persons owning property in the district were parties thereto, and, if they desired to challenge the correctness and regularity of the board of supervisors, they ought to have pursued the remedy provided for them by statute. The action of the board of supervisors was not subject to collateral attack.

The decree of the chancellor is affirmed.

*Affirmed.*