GREEN *et al. v.* HUTSON *et al.**

(Division B.   May 25, 1925.)

[104 So. 171.   No. 25038.]

1. MUNICIPAL CORPORATIONS.  *Towns are "cities" within statute as to
   issue of bonds.*
   Towns are within the proviso to Laws 1920, chapter 206, section 2,
   as to issuing bonds of municipalities, that in "cities" of less
   than twelve thousand inhabitants an issue of not more than
   $30,000 shall be without election, unless there be protest of
   twenty per cent. of the electors.

2. MUNICIPAL CORPORATIONS.  *Board's adjudication of no sufficient
   protest against bond issuance not subject to collateral attack.*
   Adjudication of board of mayor and aldermen on hearing of protest
   against issuance of bonds that it was not filed by the necessary
   twenty per cent. of the electors to require election, with conse-
   quent order of issuance without election is conclusive on col-
   lateral attack.

3. MUNICIPAL CORPORATIONS.  *Bond issue for water, light, and sewer-
   age system for one purpose.*
   A bond issue for establishing a water, light, and sewerage system
   *held* not open to objection of being for a plurality of purposes,
   making it void.

4. MUNICIPAL CORPORATIONS.  *Order at adjourned regular meeting for
   issuance of bonds valid.*
   Order of board of mayor and aldermen for issuance of bonds,
   though made at an adjourned regular meeting, *held* valid.

5. STATUTES.  *Statute last approved prevails in case of conflict be-
   tween statutes enacted at same session.*
   In case of any irreconcilable conflict between two statutes enacted
   at same session the one last approved would prevail over the
   other.

6. MUNICIPAL CORPORATIONS. *Bond issue valid without election.*
   Bond issue without election in circumstances stated by proviso to
   Laws 1920, chapter 206, section 2, is valid, being an exception to
   previously approved chapter 325 requiring interest-bearing debt
   to be authorized by majority of electors.

---

*Headnotes 1. Municipal Corporations, 28 Cyc., p. 1589 (1926 Anno.);
2. Municipal Corporations, 28 Cyc., p. 1589 (1926 Anno).; 3. Municipal
Corporations, 28 Cyc., pp. 1578, 1579 (1926 Anno); 4. Municipal Corpo-
rations, 28 Cyc., p. 328; 5. Statutes, 36 Cyc., p. 1086; 6. Municipal Cor-
porations, 28 Cyc., p. 1589 (1926 Anno).

APPEAL from chancery court of Humphreys county.
HON. E. N. THOMAS, Chancellor.

Proceeding by F. H. Hutson and others to validate mu-
nicipal bonds, to which F. R. Green and others appeared
as objectors. From an adverse decree, said objectors
appeal. Affirmed.

*Clark, Roberts & Hallam,* for appellants.

An objection to the validation of this bond issue was
made in accordance with section 6069M, Hemingway's
Code, Laws of 1920, chapter 206. This section of the
Code became part of the scheme of the legislature in
restricting municipal authorities in issuing bonds of the
municipalities. It would appear from the reading of
the whole act, chapter 206, Laws of 1920, that it was the
legislative intent to require the municipal authorities to
have the expressed will of the qualified electors of the
municipality by means of an election before the said mu-
nicipal authorities would be vested with authority to issue
bonds of the municipality.

The latter part of section 2 provides that in cities of
less than twelve thousand inhabitants, when the amount
to be issued is not more than thirty thousand dollars,
the bonds may be issued by the publishing of a resolution
unless twenty per cent of the qualified electors of the mu-
nicipality file a written protest against the issuance of
said bonds before the date set in the resolution; and in

the event twenty per cent file a protest, an election shall be held.

In interpreting this portion of section 2, we must refer to other sections of the Code. By section 5795, Hemingway's Code, being section 3299, Code of 1906, municipal corporations are divided into three classes. By this section, municipalities containing more than two thousand inhabitants are classed as cities. Those containing less than two thousand but not less than three hundred are classed as towns. Those containing less than three hundred and more than one hundred are villages. It will appear from the record that the population of Isola is eight hundred and fifty people, thereby placing Isola in the designated class of municipalities known as towns. It will be observed by a study of chapter 144 of Hemingway's Code of 1917, and amendments thereto, that different powers and authorities are granted to the various classes of municipalities and that there is a clear distinction between the meaning of the word "town" and the word "city" as it appears in the statute. As a general principle of law, as laid down in Dillard on Municipal Corporations, Vol. 1 (5 Ed.), p. 237, it is said "It is a fair and indispensable proposition of law that the municipal corporation possesses and can exercise the following powers: First, that granted in express words; second, that necessarily and fairly implied as incident to the powers expressly granted; third, that essential to the accomplishment of the declared objection and purpose of the corporation—not simply inconvenient but indispensable. Any fair, reasonable, substantial doubt concerning the existence of the powers is resolved by the court against the corporation and the power is denied."

It is further a general proposition that the statutes governing the powers and authority granted to municipalities must be strictly construed. *Georgia Railroad & Power Co.* v. *Railroad Commission,* 5 A. L. R. 1.

The word "cities" in section 2, chapter 206, Laws of 1920, means a municipality with more than two thou-

sand inhabitants; and if, by a stretch of the imagination it would be possible to construe cities as towns, by the application of the same process of reasoning, the word "cities" should include villages for there is no reason that can be advanced to show that the word "cities" means towns and does not mean villages.

To place the interpretation on this section of the Code that has been placed by the lower court is tantamount to saying that all cities with more than twelve thousand inhabitants, before issuing bonds, must hold an election, and that all cities, towns and villages under twelve thousand people may issue not more than thirty thousand dollars of bonds upon the mayor and board of aldermen publishing a resolution declaring their intention so to do, unless twenty per cent of the qualified electors in the municipality file a written protest against said issuance.

An historical reference to the issuance of bonds may be well. It will be remembered that during the years beginning in 1916 and ending in 1919 when speculation was rife, when many people were becoming millionaires over night, when cotton was selling for one dollar per pound, and when there was a great demand for all kinds of real estate investments and lands had risen from fifty dollars per acre to four hundred dollars per acre, the spread of progress and advance was reflected by the various municipalities and taxing districts and the issuance of bonds became so frequent and the limit reached in so many cases that numerous far-seeing citizens and especially representatives in the legislature saw that it was necessary to place some restrictions upon the issuance of bonds and to see that if municipalities and other taxing districts did issue the bonds, the qualified electors of said municipalities and taxing districts should be given the opportunity, not only to protest but to exercise their right of casting a vote against the issuance of said bonds.

The legislature here said this in substance: "We think that chapter 206 means what it says and that the exception is made for cities of less than twelve thousand people when the amount to be issued is not more than

thirty thousand dollars. There can be no sense in this provision of the statute unless it means what it says, for the provision of law prior to the enactment of chapter 206, which is found in chapter 5978, Hemingway's Code, provides that before the issuance of any bonds, the mayor and board of aldermen shall publish notice for three weeks and that if twenty per cent of the adult taxpayers of the municipality shall petition against the issuance of the bonds, then these bonds shall not be issued unless authorized by an election to be held for that purpose. That has been the law since the Code of 1892; but the legislature, in it wisdom, saw fit to place a further restriction and required a bond issue to be authorized by an election held for that purpose.

A further survey of the laws will show that chapter 207, Laws of 1920, was enacted for the purpose of restricting county and district bond issues and providing for an election to be held before counties and taxing districts should issue bonds, these two chapters, 206 and 207, being an expression of the will of the people as interpreted by the legislature of 1920.

The meeting at which the resolution was passed and under which such notice as was given was directed to be given, was passed on the 9th day of September, 1924, which was not the regular meeting day for said board. By a close study of the laws governing municipalities it will be found that there are two kinds of meetings of the mayor and board of aldermen provided for: First, a regular meeting, which shall be held on the first Tuesday of each month, section 5915, and special meetings, section 5916. Special meetings as provided by said section, may be called by the mayor or any two aldermen by written notice being given to the other aldermen and the mayor if he shall not have signed it and distinctly specifying the subject-matters of business to be acted upon. So far as we are able to find, no provision is made for an adjourned meeting; that is to say, a meeting that is not a recess meeting. Cities, towns and villages have no rights unless those rights are given them by the stat-

ute or by their charter; and our supreme court has very definitely laid down the principle governing the rights and powers of municipalities in *City of Hazlehurst* v. *John B. Mayes,* 96 Miss. 656.

In view of this plain statement of the law and in view of the further fact that the statutes make no provision for holding an adjourned meeting of the mayor and board of aldermen of any municipality in this state, we conclude that there is no such meeting qualified under the law as an adjourned meeting of the mayor and board of aldermen. The record will show that the meeting at which the resolution was passed and under which the notice was given or directed to be given of the intention of the mayor and board of aldermen to issue the bonds was at an adjourned meeting of the mayor and board of aldermen, which meeting was of no force.

Again referring to the purposes of the legislature of 1920 as restricting the issuance of bonds, in addition to the enactment of chapter 207 of the Laws of 1920, we find that chapter 325 was also enacted amending chapter 209, Laws of 1918. It will be remembered that chapter 209, Laws of 1918, was an act prescribing restrictions upon the powers of counties, municipalities, and other taxing districts to incur debts and issue warrants and providing for the payment of outstanding warrants, it being section 2, which was amended by chapter 325, Laws of 1920; and the law is made to read as follows: "That no interest-bearing debt except as provided in section 1 of this act shall be incurred in any county, municipality, or other taxing district, unless authorized by a majority of the electors who shall vote in an election called for that purpose."

It cannot be said that chapter 206, Laws of 1920, repealed this provision of the law, because there is no conflict in the two chapters except that chapter 206 provides that in cities of less than twelve thousand inhabitants when the amount to be issued is not more than thirty thousand dollars, the board of mayor and aldermen may issue the bonds without an election unless a protest is

filed by at least twenty per cent of the qualified electors. It was the purpose of the legislature to require an expression of the will of the electorate on all matters of the incurring of interest-bearing debts by municipalities, counties and taxing districts. If the lower court is correct, we have this anomalous situation: The right of one of the most subordinate forms of government; to-wit: municipalities under twelve thousand inhabitants, with the right to issue bonds by the publishing of notice and the Mississippi laws requiring larger taxing districts, larger municipalities, that is, municipalities with more than twelve thousand inhabitants, counties, and other taxing districts to hold an election before issuing the bonds of such taxing district. We do not believe that this court will place any such strained construction upon section 2 of chapter 206, Laws of 1920.

From the above, we respectfully submit that the twenty-five thousand dollars of bonds of the town of Isola were not legally issued and should not have been validated by the lower court and should be held to be not binding obligations against the said town of Isola and the property therein.

*Montgomery & Montgomery,* for appellees.

## I.

The word "cities," as contained in section 2 of chapter 206, Laws of 1920, is equivalent to the word "municipalities." The power of any and all municipalities to issue public improvement bonds of the kind now in question is expressly conferred by section 5968, Hemingway's Code, section 3415, Code of 1906. All questions as to power being totally foreclosed by the above section, we pass on to the construction of the statute providing the manner for the issuance of all bonds by any municipality. It is elementary learning that a statute will be so construed as to uphold its constitutionality if this be reasonably possible. *Easterling Lumber Co.* v. *Pierce,* 106 Miss. 672, 64 So. 461.

Now the first section of chapter 206 makes the chapter expressly applicable to all municipalities of every kind, character and description that may be organized in this state. Section 2 provides for a resolution of intention to issue bonds and the publication of notice thereof, and then provides how an election on the proposition may be held, and when same may be dispensed with.

Appellants contend that the word "cities" as used in this act, should be construed to mean all municipalities which have a population of more than two thousand and less that twelve thousand. They say that this is true because the Laws of 1920 should be construed in relation to, and be made to harmonize with section 5795, Hemingway's Code, section 3299, Code of 1906. They say that under this section, all municipalities having more than two thousand people are cities, and that the word "cities" can and does embrace only such municipalities as have more than two thousand inhabitants.

Applying their construction to the word "cities," the statute would then provide that where the cities had more than twelve thousand inhabitants an election would always be necessary, and also where the municipality had less than two thousand inhabitants, an election would always be necessary. But in those municipalities containing from two thousand to twelve thousand inhabitants, an election would not be necessary unless the protest were filed. In other words, the same rule would govern both the very large municipality and the very small municipality, but the medium municipality of between two thousand and twelve thousand inhabitants would not need to call an election.

Such an interpretation of the statute would not be consistent with its constitutionality, since it would be an arbitrary classification. Section 88, Miss. Constitution of 1890; 19 R. C. L. sections 48, 49; Municipal Corporations, p. 742, 743; *Knopf* v. *People,* 185 Ill. 20, 57 N. E. 22, 76 A. S. R. 17; *Strong* v. *Dignan,* 207 Ill. 385, 69 N. E. 909; 99 A. S. R. 225 and note; *L'Hote* v. *Milford,* 212 Ill. 418, 72 N. E. 399, 103 A. S. R. 234; *Chicago Terminal Trans-*

*fer R. Co.* v. *Greer,* 233 Ill. 104, 79 N. E. 46, 114 A. S.
R. 113; *Douglas* v. *People,* 225 Ill. 536, 80 N. E. 341, 116
A. S. R. 162, 8 L. R. A. (N. S.) 1116; *People* v. *Grover,*
258 Ill. 124, 101 N. E. 216, Ann. Cas. 1914B, 212; *Long-
view* v. *Crawfordsville,* 164 Ind. 117, 73 N. E. 78, 3 Ann.
Cas. 496, and note, 68 L. R. A. 622; *Kraus* v. *Lehman,*
170 Ind. 408, 83 N. E. 714, 84 N. E. 769, 15 Ann. Cas.
849 and note; *State* v. *Des Moines,* 96 Ia. 521, 65 N. W.
818, 59 A. S. R. 381, 31 L. R. A. 186; *State* v. *Somers'
Point,* 52 N. J. L. 32, 18 Atl. 694, 6 L. R. A. 57; *Wasner*
v. *Hoos,* 60 N. J. L. 482, 38 Atl. 449, 64 A. S. R. 600 and
note; *Allison* v. *Corker,* 67 N. J. L. 596, 52 Atl. 362, 60
L. R. A. 564; *Edmonds* v. *Herbrandson,* 2 N. D. 270, 50
N. W. 970, 14 L. R. A. 725; *State* v. *Ellett,* 47 Ohio St.
90, 23 N. E. 931, 21 A. S. R. 772, and note; *State* v. *Bar-
gus,* 53 Ohio St. 94, 41 N. E. 245, 53 A. S. R. 628; *State*
v. *Jones,* 66 Ohio St. 453, 64 N. E. 424, 90 A. S. R. 592,
and note; *State* v. *Beacon,* 66 Ohio St. 491, 64 N. E. 427,
90 A. S. R. 599; *Ayars' Appeal,* 122 Pa. St. 266, 16 Atl.
356, 2 A. L. R. 517 and note.

"GENERAL RULE.—Rule Stated.—It is a well-estab-
lished rule that an act under which municipalities are
classified on the basis of population does not fall within
a constitutional prohibition against local or special laws,
or conflict with a constitutional provision requiring gen-
eral laws to have uniform operation, where the classi-
fication has reasonable relation to the purposes and ob-
jects of the legislation, or, in other words, is based upon
a rational difference in the necessities or conditions found
in the municipalities placed in the different classes."
*L'Hote* v. *Milford,* 212 Ill. 418, 72 N. E. 399, 103 Am. St.
Rep. 234; *Chicago Terminal Transfer R. Co.* v. *Greer,*
223 Ill. 104, 79 N. E. 46, 114 Am. St. Rep. 313; *Douglas*
v. *People,* 225 Ill. 536, 80 N. E. 341, 8 L. R. A. (N. S.)
1116, 116 Am. St. Rep. 162; *Northwestern University*
v. *Wilmette,* 230 Ill. 87, 82 N. E. 615; *School* v. *City of
Hays,* 162 Ind. 193, 70 N. E. 134; *Longview* v. *Crawfords-
ville,* 164 Ind. 117, 3 Ann. Cas. 496, 73 N. E. 78, 68 L.

R. A. 622; *State* v. *Ritt*, 76 Minn. 531, 79 N. W. 536; *State* v. *Westfall*, 85 Minn. 437, 89 N. W. 175, 57 L. R. A. 297.; *Tyler* v. *Plainfield*, 54 N. J. L. 529, 24 Atl. 484; *In Re Sewer Assessment, Etc.*, 54 N. J. L. 156, 23 Atl. 517; *Johnson* v. *Milwaukee*, 88 Wis. 383, 60 N. W. 270.

Let us turn anew to the Laws of 1920. Let us see if the interpretation contended for by appellants can be given to the word "cities." Is there a valid reason and a rational distinction between the necessity for an election in a large municipality and the necessity for an election in a small municipality? The answer is yes. Why? Because in a large municipality, even though many persons object to the bond issue, it would be so burdensome and expensive to circulate a petition of protest and obtain signatures of twenty per cent or more of the qualified electors. The average citizen rather than bear the expense, and consume the time involved in circulating such a petition would simply forego his right to protest and would permit the bonds to be issued. It is for this reason that an election should always be mandatory in a large municipality. These reasons do not at all exist in a small municipality. The smaller the municipality is, the less does the reason for an election exist. Why? Because in a small municipality everybody knows everybody else's business and especially the municipality's business. In just a few minutes, any citizen could circulate and obtain the protest from twenty per cent of the qualified electors if they desired to protest, and the expense of an election as a mandatory requirement in all cases could and would serve no good purpose.

Now if the word "cities" is construed as equivalent to the word municipalities, then the classification takes on a sensible meaning, and is based upon a reasonable and very natural difference between the two classes. We submit that the obvious purpose and intention of the legislature was that elections should always be necessary in municipalities of more than twelve thousand people, and

unnecessary in municipalities of less than twelve thousand people unless a petition of protest was filed.

The true meaning of statutes, when ascertained, will be enforced by the court even to the extent of correcting errors in the language used. *Roseberry* v. *Norsworthy,* 100 So. 514. It is not a radical departure from precedent to construe the word "cities" to embrace "towns." *Denver* v. *Coulehan,* 20 Colo. 471, 39 Pac. 425, 27 L. R. A. 751; Note to Volume 32 Ann. Cas. 1914B, pages 215, 216, and cases there cited.

The legislature of Mississippi has repeatedly used the word "city" as being synonymous with "municipality." For instance, in the Laws of 1918, chapter 208 (being sections 6069f and 6069g of Hemingway's Supplement) the first section makes the law expressly applicable to all municipalities and leaves no doubt about its being applicable to all cities, towns, and villages. But read section 2 of this same act. We also find the general and ordinary use of the word "city" in chapter 322, Laws of 1920 (sec. 5875, Hemingway's 1921 Supplement.) The Laws of 1924 are not free from this use of the word "city" in a generic sense. Chapter 192, Laws of 1924, Chapter 283, Laws of 1924, sec. 193.

A city has been construed to be an incorporated town. 11 C. J. 787; 1 Blackstone Comm. 114; *Klauber* v. *Higgins,* 117 Cal. 451, 460, 49 Pac. 466; *People* v. *Grover,* 258 Ill. 124, 131, 101 N. E. 216, Ann. Cas. 1914 B, 212; *Johnson Cycl. Higgins* v. *Crab Orchard,* 8 Ky. L. 112, 144; *Harvey* v. *Osborn,* 55 Ind. 535, 542; *Burke* v. *Monroe County,* 77 Ill. 610, 615; *Bruner* v. *Madison County,* 111 Ill. 11, 15; *Odegaard* v. *Albert Lea,* 33 Minn. 351, 352, 23 N. W. 526; *Borders* v. *State,* 66 S. W. 1102, 1103; *State* v. *Harbor Line Comrs.,* 4 Wash. 6, 10, 29 Pac. 938.

A city has been defined as being a municipal corporation. 11 C. J. 788; *Elma* v. *Carney,* 4 Wash. 418, 30 Pac. 732. The use of the word "city" in a statute imports a municipal corporation. *Mitchell* v. *Franklin County Treasurer,* 24 Ohio St. 143, 154.

139 Miss.—31.

The word "city" in constitutional and statutory provisions has been construed to mean a town. *People* v. *Stephens,* 62 Cal. 209; *Heard* v. *State,* 113 Ga. 444, 445, 39 S. E. 118; *Murphy* v. *Waycross,* 90 Ga. 36, 15 S. E. 817; *State* v. *Harbor Line Comrs.,* 4 Wash. 6, 10, 29 Pac. 938; *Trueman* v. *St. Maries,* 21 Id. 632, 636, 123 P. 508; *Coon* v. *Sommercamp,* 26 Id. 776, 784, 146 Pac. 728; *Plummer* v. *Borsheim,* 8 N. D. 565, 568, 80 N. W. 690; Webster's New International Dictionary (1924 Ed.), p. 406.

We, therefore, most earnestly submit that the word "cities" both in constitutional and statutory provisions has been construed in a wealth of precedent to embrace towns. We further submit that the clear intention, and purpose of the legislature, both in the statute in question and in at least a half dozen other public improvement statutes relative to municipalities, is that the word "cities" imports any municipality. We further submit that all statutes should be construed so as to uphold their constitutionality if such be reasonably possible. We submit that the word "city" must be construed to embrace towns in order to uphold the constitutionality of chapter 206, Laws of 1920. It would be unconstitutional to class very small and very large municipalities in one class as against medium sized municipalities in the other class. It would be unconstitutional to require no election unless protest be filed in the medium sized municipality, and to always require an election both in the very small municipality and the very large municipality. It would be unconstitutional to create a classification based upon no reasonable distinction or difference between the classes, and without any criterion whatever for the wholly arbitrary classification. Common sense and ordinary human experience make it axiomatic to all of us that in small towns people know each other better and are more familiar with the opinions of each other, than is the case in large municipalities. Hence, it is reasonable to draw a line somewhere between the two extremes and provide that such shall not be necessary in

the small municipalities unless a petition of protest be first filed. We submit that such a classification is reasonable, just, and proper and is entirely within the spirit and meaning of our Constitution.

## II.

A collateral attack cannot be here made upon an order of the board. Opposing counsel say that the petition of protest was signed by forty-three qualified electors of the town of Isola. They say that the board brushed aside the wishes of the people and the taxpayers of the town in issuing these bonds. They further say that a great many names on the original petition requesting the board to issue bonds are the same as those on the petition of protest. If a direct appeal had been taken from the order of the mayor and board of aldermen to the circuit court in the manner provided for by the statute, then such argument would be pertinent, and we would feel called upon to answer same. This was absolutely a jurisdictional matter. The board proceeded to diligently inquire into the question and took evidence. After a full, free and fair hearing upon the issue, the following judgment was entered: Petition of protest against sale of twenty-five thousand dollars of public utility bonds adjudged not to have been signed by twenty per cent of the qualified electors of the town of Isola, found to be no authority in law, and adjudged to have no effect upon the authority and legal duty of this mayor and board of aldermen: Petition overruled; and other proceedings relative thereto. From this solemn judgment of the mayor and board of aldermen no direct appeal was taken as provided by law.

Validation statute does not cut off direct appeals from the tribunal issuing the bonds to the circuit court, and all proceedings for the validation of the bonds are such that the very jurisdiction itself of the chancery court is based and predicated upon the finality and completeness of the proceedings and judgments relative to the bond

issue. Validation is collateral. *Pearce* v. *Mantachie Consolidated School Dist.*, 99 So. 134; see also *Borroum* v. *Purdy Road District*, 131 Miss. 778, 95 So. 677; *Liddell* v. *Municipality of Noxapater*, 129 Miss. 513, 92 So. 631; *Johnson* v. *Board of Supervisors of Yazoo County*, 113 Miss. 435, 74 So. 321; *Wofford* v. *Williams*, 110 Miss. 637, 70 So. 823; *Hinton* v. *Perry County*, 84 Miss. 546, 36 So. 567.

We, therefore, confidently submit that this court is no place for a jury argument which could only have been made upon a direct appeal to the circuit court.

### III.

The resolution of intention to issue embraces only one definite proposition. The town authorities contemplated the erection of one building—a complete power house— wherein the same power would be indiscriminately used for the lights, water, and sewerage system.

Whether the purpose and object of a bond issue is double or single always presents to the court a question which must be determined along more or less broad lines and main general principles. In the very earliest days of the jurisprudence of Mississippi, our court applied common sense to the judicial ascertainment and promulgation of the true rule. *Kemp et al.* v. *Town of Hazlehurst*, 80 Miss. 445, 31 So. 908. The true rule also has been very clearly stated by the supreme court of California in *Clark* v. *Manhattan Beach*, 175 Cal. 637, 166 Pac. 806, 1 A. L. R. 1532. The state of Florida has also passed upon this question in *Potter* v. *Lainhart*, 44 Florida, 647, 33 So. 251.

We call attention to the further statement of the rule as contained in 15 C. J., sec. 329, page 618, and *People* v. *Counts*, 89 Cal. 15, 26 Pac. 612; *Manly* v. *Pueblo County*, 46 Colo. 491, 104 Pac. 1045; *Potter* v. *Lainhart*, 44 Fla. 647, 33 So. 251, and many other cases there cited.

In *Shurlds* v. *Holmes County*, the supreme court of Mississippi held that to give notice of intention to issue bonds for the purpose of constructing roads, providing

rights of way therefor, and of building bridges in an entire district, complied with the "purpose" requirement of the statute, and the money could be spent on any road in the district. *Shurlds* v. *Holmes County,* 128 Miss. 813, 91 So. 563.

We dislike to further prolong this brief on what we most earnestly submit is elementary law in Mississippi, but before closing this brief we desire to say that the case of *Kemp* v. *Hazlehurst,* cited supra, has been affirmed in some of the most important and most hotly contested controversies that have ever been before the courts of this country—cases in which millions of dollars were involved. We cite the following instances: *Blaine* v. *Hamilton* (1911), 64 Wash. 353, 35 L. R. A. (N. S.) 577, 116 Pac. 1075; *Clarke* v. *Los Angeles* (1911), 160 Cal. 317, 116 Pac. 966 (involving three millions of dollars); *State ex rel. School District* v. *Gordon,* 223 Mo. 1, 122 S. W. 1008; *Briggs* v. *City of Raleigh,* 81 S. E. 1084, 166 N. C. 149.

We also wish to cite without comment the following exponents of the true rule as adopted in Mississippi: *Tulloch* v. *Seattle* (1912), 69 Wash. 178, 124 Pac. 481.; *Coleman* v. *Town of Eutaw* (1908), 47 So. 703, 157 Ala. 327; *Swann* v. *City of Murray,* 142 S. W. 244, 146 Ky. 148; *State ex rel.* v. *City of Chillicothe,* 98 S. W. 465, 200 Mo. 97.

"The test of whether a proposition for issuance of municipal bonds is single, so that it cannot be submitted to the voters in combination with others, is not its ability to stand alone, but whether or not the several parts of a project are so related that, united they form in fact but one rounded whole." 19 R. C. L. 999.

Isola simply contemplated the construction of a very ordinary and usual power plant to furnish facilities for light, water and sewerage to the little town of Isola. It covered a single and well-rounded scheme—one that is absolutely necessary to the public welfare of this thriving little town. We confidently submit that the lower court was right in overruling this objection.

## IV.

The notice of intention to issue bonds was entered at a continued meeting, and was lawful. The mayor and board of aldermen of Isola met in their regular meeting on the first Tuesday in September, 1924, as prescribed by statute. The Code indicates that the power to issue bonds shall be exercised by ordinance (sec. 5813, Hemingway's Code, sec. 3316, Code of 1906).

Desiring to comply with section 5935 of Hemingway's Code, being section 3405 of the Code of 1906, which requires ordinances to be read and considered section by section—the writer advised the board to continue the meeting until the next Tuesday, at which time he would have the proper and necessary order reduced to writing and ready for consideration. On the appointed day the board organized. Such a meeting is absolutely legal according to all of the authorities. Opposing counsel really admit that there is nothing in this objection, and confess that a continued meeting is lawful. 28 Cyc. 327.

## V.

Chapter 325, Laws of 1920, has no bearing on the question. Opposing counsel cite chapter 325, Laws of 1920. This law was approved March 6, 1920. The statute under consideration is chapter 206 of the Laws of 1920. Accordingly chapter 325 has nothing to do with the matter. If it conflicts, then to this extent, it is superseded by chapter 206. In other words, it all comes back to the proper construction of chapter 206, Laws of 1920. We submit that the other objections are all untenable and contrary to well-settled law. We confidently submit, therefore, that the case should be affirmed.''

HOLDEN, P. J., delivered the opinion of the court.

The suit involves the validation of twenty-five thousand dollars of bonds issued by the town of Isola for the purpose of constructing a plant to furnish the town with

water, lights, and sewerage. After the municipal authorities had ordered the issuance of the bonds, several citizens of the town proceeded by an injunction bill to restrain the board from disposing of the bonds. Thereafter the municipal authorities proceeded under the statute to have the bonds validated in the chancery court. The complainants in the bill then appeared, as objectors at the validating proceedings. After a hearing by the chancellor the objections to the validation of the bonds were overruled and the bonds validated by the court. From the decree the objectors appeal.

Isola is a town of about eight hundred people, and, acting under chapter 206 of the Laws of 1920, proceeded in a regular manner to issue the bonds for the purpose of establishing a water, light, and sewerage system for the town. A protest was filed before the board by a number of citizens, but upon the hearing of the protest the board of mayor and aldermen adjudicated the fact that there was no petition of twenty per cent. or more of the qualified electors of the town protesting against the issuance of the bonds, and therefore the bonds were ordered issued without an election. All of these proceedings seem to have been regular under the statute.

The objections to the issuance of the bonds urged then, and presented now on this appeal, are briefly stated as follows:

First. It is contended that the word "cities" contained in section 2 of chapter 206, of the Laws of 1920, cannot be applied to a town, because a city is required to have two thousand or more inhabitants, and that therefore no bond issue can be ordered by a town, because it is without power to do so. We think the contention is unsound, because the word "cities" as used in the statute means any municipality containing more, or less, than twelve thousand inhabitants. And where the amount of the bond issue is not more than thirty thousand dollars, and the population is less than twelve thousand, they may be issued without an election, provided there is not filed a protest of twenty per cent. of the qualified electors of

the municipality. Therefore we decide that the town of Isola is within the statute, and was not required to hold an election for the purpose of issuing the bonds, since there was no protest of twenty per cent. of its qualified electors.

Second. It is urged that the adjudication of fact by the board of mayor and aldermen that twenty per cent. of the qualified electors did not protest against the issuance of the bonds may be attacked in a collateral proceeding, where there was no direct appeal taken from the order of the board of mayor and aldermen to the circuit court in the manner provided by statute. We do not think there is any merit in the contention, because the order of the board is conclusive on collateral attack. *Borroum* v. *Purdy Road Dist.,* 131 Miss. 778, 95 So. 677; *Pearce* v. *School District,* 134 Miss. 497, 99 So. 134; *Liddell* v. *Municipality of Noxapater,* 129 Miss. 513, 92 So. 631; *Johnson* v. *Board Yazoo County,* 113 Miss. 435, 74 So. 321; *Wolford* v. *Williams,* 110 Miss. 637, 70 So. 823; *Hinton* v. *Perry County,* 84 Miss. 546, 36 So. 567.

Third. It is contended that the bond issue was void because it was for a plurality of purposes; that is, it was for the purposes of establishing a water, light, and sewerage system for the town of Isola. We cannot agree with counsel on this point, because the issuance of bonds was for one object, the common purpose of establishing a municipal plant to supply the needs of the inhabitants with public necessities of a similar character.

Fourth. It is urged that the notice given by the board to protest against the bond issue did not state where and when the protest should be filed. We have carefully examined the notice given, and find that it was adequate and complies with the law in that regard; therefore the contention is without merit.

Fifth. It is contended that the resolution of the intention to issue the bonds was passed at an unlawful meeting, in that the order was passed at an adjourned meeting. We think this position is unavailing, because the

record shows that the regular meeting was adjudicated to a later day for the purpose of carrying on the regular and unfinished business of the board, and that the issuance of the bonds was ordered at the adjourned regular meeting, and therefore the action was valid.

Sixth. It is contended that an election is a condition precedent to the issuance of bonds in all cases, and that therefore the bonds in the instant case were void because no election was held for that purpose.

We disagree with counsel on this point because chapter 325, Laws of 1920, which provides that no interest-bearing debt, etc., shall be incurred by a municipality unless authorized by a majority of the electors, was passed and approved March 6, 1920, and chapter 206 was passed and approved April 2, 1920, and we find no conflict between the acts, except that chapter 206 makes certain exceptions to the provisions of chapter 325, and, as chapter 206 was enacted at the same session of the legislature, and approved after chapter 325 was approved, the former statute, if there was an irreconcilable conflict, would prevail over the latter.

However, we see no trouble in reconciling the two acts and reaching the legislative intent that chapter 206 does not repeal chapter 325, but merely makes an exception in certain cases with reference to the issuance of bonds without an election for that purpose. So it is our opinion that the bonds issued in the case before us were valid without an election.

In view of these conclusions, we think the decree of the lower court validating the bonds involved was correct, and is therefore affirmed.

*Affirmed.*