## HEWLING ET AL. *v.* BLAKE ET AL.

[70 South. 247.]

1. VENDOR AND PURCHASER. *Innocent purchasers. Notice. Adverse possession. Lost deed. Acts of ownership. Presumption. Quieting title. Evidence. Claim against state. Void tax deed. Taxation.*

   In a suit in equity to confirm title to land claimed by plaintiffs where the defendants claimed title to the land by adverse possession and plaintiffs claimed to be innocent purchasers for value without notice, the fact that such lands were indicated on an official county map as owned by defendants and the sectional index used by the county reflected all the conveyances affecting these lands and showed numerous deeds executed by defendant and his grantors from time to time and the fact that the property had been for a long time assessed to and the taxes paid by defendants, were sufficient to charge plaintiffs with notice of defendant's claim to the land.

2. ADVERSE POSSESSION. *Lost deed. Acts of ownership. Presumption.*

   Where defendants claim title to land under a lost deed from the president of the board of police made under an order of the board that the president execute such deed pursuant to the provisions of the act of October 19, 1852 (Laws called Sess. 1852, chapter 68), authorizing the sale of county lands for levee purposes, which order recites that defendant's remote predecessors in title had bought and paid for the land, the long continued possession of such land by defendants and their predecessors accompanied by such acts of ownership as any reasonably prudent owner would exercise such as paying the taxes, cutting

timber, leasing the land for pasturage and granting hunting and fishing privileges, raised a presumption of law that the original deed was executed and delivered.

3. ADVERSE POSSESSION. *Claim against the state. Void tax deed. Statutes,*

In an action to quiet title to land, where plaintiff claimed title to the land which the county held in trust for levee purposes as provided for by Act of October 19, 1852, under a deed from the county, while defendant claimed title thereto by adverse possession under color of title of a subsequent tax deed, defendant's adverse possession after the year 1890 could not ripen into title, since by section 104, Constitution 1890, the running of the ten-year statute of limitations against the state was stopped.

4. TAXATION. *Tax deed. Validity.*

A tax deed to land held by the county in trust for levee purposes as provided by the Act of October 19, 1852, was void, since such land while so held was not subject to sale for taxes.

APPEAL from the chancery court of Warren county.
HON. E. N. THOMAS, Chancellor.

Suit by S. A. Hewling and others against Henry L. Blake and others. From a judgment for defendants under a cross bill, plaintiffs appeal.

The facts are fully stated in the opinion of the court.

*T. G. Birchett* and *Hirsh, Dent & Landau,* for appellants.

It has been the law of this state, back and prior to the time of the alleged purchase of the land from the county by Benson Blake, that "all sales of land and all other conveyances whatsoever of lands shall be void as to all creditors and subsequent purchasers for valuable consideration without notice unless they shall be acknowledged, or proved and lodged for record." Code of 1857, p. 310, article 21; Code of 1871, section 2304; Code of 1880, section 1212; Code of 1892, section 2457 Code of 1906, section 2784.

The sections cited, *supra,* have been the law since before the date of the alleged sale from Warren county to

Benson Blake, and to this day. The effect of these sections being that when one receives a deed to a parcel of land and fails to have it recorded, that a subsequent purchaser without knowledge of same acquires a valid title to same; and he who withholds his deed from record is defeated of his ownership, unless the other had actual notice thereof.

The decisions construing the above sections have almost uniformly involved the question, as to whether the purchaser claiming under the ·unrecorded deed would be saved by the purchaser under the subsequent deed having actual notice of such an unrecorded deed. '

"While possession of land under an unrecorded deed is equivalent to registration while the possession under it lasts, but a purchaser of the land, where the record shows a good title, is not bound to look beyond the record of a former occupancy of it under a deed of which he is not shown to have had notice." *Hiller* v. *Jones,* 66 Miss. 636, Syllabus; *Newton* v. *Priebatch,* 16 Miss. 406; *Humphreys* v. *Merrill,* 52 Miss. 94; *Taylor* v. *Lowenstein,* 50 Miss. 281; *Henderson* v. *Downing,* 24 Miss. 106, and *Harper* v. *Tapley,* 35 Miss. 606.

It is the law in Mississippi that a purchaser of a legal title is not effected with record notice of any conveyance except those through whom he is compelled to deraign his title. *Baker* v. *Griffin,* 50 Miss. 158; *Harper* v. *Bibb,* 34 Miss. 472; *Session* v. *Reynolds,* 7 Smedes & Marshall, 153; *Hiller* v. *Jones,* 66 Miss. 642; *Hart* v. *Gardner,* 81 Miss. 650.

Having as we think established the law beyond dispute that the deed even if it existed, which was denied by the pleadings, not being of record, was not effective against the appellants, we will discuss the order of the board of supervisors, or rather its predecessor, the board of police. What could this operate as, and to what extent was it notice?

The county map is put in evidence by the appellees and it shows, now owned by the Blakes, appellees, the very

land shows in the order, *supra,* we will explain. The land involved in the instant suit is section 6, township 17, range 4, east, Choctaw district. The land in the order is section 6, township 17, range 4, east. The map shows two sections by the number 6, one in township 17, range 4, east, Choctaw district, and the other not in the district at all; in other words there were two sections 6, of the same township and range, one in the district and one ordinary Government Survey. The order does not show the county, by its board of police, even sold the one in Choctaw district to Mr. Benson Blake, but shows it sold the other, the plain section. The map shows that the plain section is owned by the Blakes and so does the evidence. What notice could be imputed to an order (even if this court should take the view, which we do not think is the law, that the order is to be so dignified and is to be considered as notice), when this order does not set forth the land purchased by the appellants, but other land adjoining said land purchased by them, which was owned by the Blakes. We think this undoubtedly eliminates the order from all consideration. It clearly is not anything upon which a claim of an unrecorded instrument could be based, as it does not even call for or describe the land involved in the instant suit. A deed, even of record, from the county to Benson Blake, omitting the Choctaw district, as the designation of the land, and describing it by the regular survey, would not put the appellants on record notice, because, describing under the order, land in the neighborhood held by the Blakes, it could not have suggested it meant land a mile or so off of another description. Any other construction would entirely destroy the whole theory of the registry statutes.

The land involved in the instant suit is wild land, uncultivated, unfenced, a howling wilderness, primeval forest, as appears from the evidence in this case; subjected to no actual occupation, no possession by the appellees, who may claim they paid the taxes on these

lands, not subject to assessment or taxation, permitted three independent cuttings, scattered over nearly thirty years. This court has held that payment of taxes was not evidence of possession (*Leavenworth* v. *Reeves*, 64 So. 663-5-6). Land owned by the county is not subject to assessment or to taxes, being exempt by the statutes of this state, since before 1858, therefore what can the illegal assessment and unlawful collection of taxes on land not subject to same have on any purchaser who finds the land owned by the county on the records of deeds, where the law obligates him to search. What notice can unlawful acts have, impute or give? Lands owned by the county were specially exempted from all assessment and taxation, as follows, towit: Code 1857, p. 73, Art. 11; Code 1871, sec. 1662, page 344; Code 1880, sec. 468; Code 1892, sec. 3744.

Hereafter, in our brief, we will discuss the law of adverse possession taken in connection with the evidence herein, which will show no occupancy, ownership or claim of any kind was even made to these lands until after suit was brought, recognized by the law.

In *Taylor* v. *Mosely*, 57 Miss. 547, the court says: Where in the record does the evidence show open, notorious, or exclusive possession of the lands by the appellees under a legal or equitable title? The evidence of Mr. T. R. Foster, record pages 55 to 58, introduced by the appellees, shows that since 1889 he has been, up to the time of their sale, in possession of said lands for Warren county, trying to sell same; had time and again showed purchasers over the lands, had them surveyed and had no knowledge the Blakes even thought they owned same until after the sale by the county. These lands, one of the appellees had only been over once, and that after the sale, and so far as the record shows the other appellee had never seen the lands. That he had, for the county, given the same permission to Capt. Fletcher, who must have doubted the appellees' claim, or he would not have gotten the consent of the agent of the

county for his fishing club. Foster is the witness of the appellees and his evidence shows the county claimed same since 1889. The record shows nothing but, on its face, an unlawful payment of taxes, on lands not subject thereto, and two timber cuttings years apart, and the evidence does not fix these cuttings with any certainty on these lands.

We will now take up the claim of the appellees to the southwest quarter of section 6, township 17, range 4, east, C. C., and we will undertake to clearly demonstrate that the appellees never had or acquired any title of any kind whatsoever to this land.

The appellees, in making their claim, do not undertake by even a shadowy deed, or a long lost and forgotten order of the board of police, which no one is charged by law to look up, or any other claim of transfer from Warren county, to acquire this land. They base their claim of title on a tax deed (rec. p. 23) from David Garrison, Tax Collector of Warren county, to the State of Mississippi, dated July 1, 1867, recorded in Deed Book "G. G.," p. 302, for the taxes of 1866, and a forfeited land patent from the state to B. J. Miller, dated October 13, 1869 (rec. p. 23) and a quitclaim deed from R. J. Miller to Mary S. Blake, dated January 25, 1873, recorded in Deed Book "P. P.," p. 200.

At the time of the sale to the state of Mississippi by the Tax Collector, *supra,* it is conceded and shown by the record in this case that the title and ownership of this land was in Warren county.

This tax sale is unquestionably void, because at the time of the sale the land owned by the county was not subject to assessment or sale for taxes. The Code of 1857 was operative at that time, and on page 73, article 11, the law distinctly says that land held by the county is not subject to taxation. It is hardly necessary to cite the recent decisions of this court on such a clear proposition. We will mention, in passing, *Edwards* v. *Butler,* 89 Miss. 179, and *Howell* v. *Miller,* 88 Miss. 655.

In this last case (88 Miss. 667) "The swamp and over-flowed lands were never the subject of taxation and the sale for non-payment. Not being subject to any tax or any assessment, a sale of them had no warrant of law and the purchaser acquired no title against the state, or the state's vendee who bought with a warrant of law for this special sale."

These lands having been conveyed under ·the act of the legislature, hereinafter discussed, and the title being vested in the county for public uses pursuant to the terms of the donation, were not subject to taxation, or sale, for non-payment; and such sale could not be set up against the county's vendee, who bought with a warrant of law for their special sale.

The lands in controversy are swamp and overflowed lands, passing to the state of Mississippi under the Act of September 28, 1850.

From the above, we think it is clear that the Blakes got no title out of the ·county by virtue of this tax sale to the southwest quarter of said section, and that the legal title to these lands rested in the county at the time of the conveyance by the county to Phillip  H.  Field, through whom appellants claim.

*J. B. Dabney*, for appellee.

Counsel altogether ignores the sale by the State to Benson Blake of this whole section, as shown by the auditor's certificate.  He urges that because the lands of the county were exempt from taxation under the statutes, no title could be passed to the southwest quarter by the sale of July 1, 1867, and he cites the laws of exemptions beginning with the Code of 1857.  This sale, however, took place on May 17, 1854, and the title having passed to the county under the Act of 1852, if county lands were assessable between that date and May 17, 1854, Mr. Blake acquired a good title under this deed. The exemptions from taxation in Hutchinson's  Code (1848) are as follows:

"Provided, that this act shall not be so construed as to authorize the assessing and collecting of any tax on the estate, real and personal, of any religious society, or the real or personal estate of any institution for the education of youth, or the maintenance of schools, or for charitable purposes, or any estate real or personal, belonging to any incorporated city or town, or a poll tax on any officer or soldier in the army or navy of the United States." Hutch. Code, 171. It will be seen that they do not mention county property at all. There is no change in this law by the Acts of 1848, 1850, 1852 or 1854, and not until the Code of 1857 is county property mentioned in the list of exemptions. The case of *Howell* v. *Miller,* is not applicable for the reason that at the time of the tax sales in question the lands involved were owned by the state, not by a county, the title never having passed out of the state. The case of *Edwards* v. *Butler,* 89 Miss. 179, too, involves lands the title to which was in the state, and further, they were school lands, exempt by statute.

It is true that in the case of *Leavenworth* v. *Reeves,* 64 So. 660, cited by counsel, as well as in several other cases, it is held that a void tax deed will not support a title founded on three years' possession; however, we submit that in all of the cases so holding, the possession is for only a short period, designated in these special statutes, and in no case has it been held that a void tax deed is not color of title on which to base possession under the general ten year statute. On the other hand, it has been repeatedly held that no matter how defective the foundation of the claim, ten years' occupation gives title. For instance, a deed from a person who does not appear to have any title or authority. *Welborn* v. *Anderson,* 37 Miss. 162. A mere parol gift, *Davis* v. *Davis,* 68 Miss. 478. An unauthorized deed from a county, *Warren County* v. *Lamkin,* 46 So. 497, 93 Miss. 123.

In the instant case, no claim is made under these short statutes, but only under the ten years' statute of limitations, hence, even the void (which, however, we do not

concede), tax titles under which appellees claim the southwest quarter of this section are sufficient for the purpose in hand.

The Code of 1830 is silent as to the operation of these statutes against counties and we conclude that the common law was in force in this state on such matters. Our supreme court so decided, saying that such limitations against counties were operative at common law. *Clements* v. *Anderson,* 46 Miss. 597. In the case of *Brown* v. *Supervisors,* 54 Miss. 230, the court held that the bar of the statute operated to prevent the county recovering school land, when held under a void lease, and, so far as the term perfected the title of the lessees. This doctrine was reaffirmed in *Jones* v. *Madison County,* 72 Miss. 807, 18 So. 87. We therefore conclude that the board of supervisors cannot now maintain its suit for this parcel of land.''

It will thus be seen that for a period of twenty-five years during which the statute of limitations ran against the county, this land was claimed by appellees, who were in possession of same and giving mortgages and paying taxes.

Now, as to the character of appellees' possession, this case is nearly on all-fours with that of *McCaughan* v. *Young,* 37 So. 839, 85 Miss. 297. From the opinion in that case we quote as follows: ''The true doctrine, and the one now generally recognized, is thus stated by HARRIS, J., in *Ford* v. *Wilson,* 35 Miss. 490, 72 Am. Dec. 137: ·'That neither actual occupation, cultivation or residence are necessary to constitute actual possession when the property is so situated as not to admit of any permanent useful improvement, and the continued claim of the party has been evidenced by public acts of ownership, such as he would exercise over property which he claimed in his own right, and would not exercise over property which he did not claim. *Worthley* v. *Burbanks,* 146 Ind. 534, 45 N. E. 779; *Hubbard* v. *Kiddo,* 87 Ill. 578; 3 Washburn on Real Property, sec. 1965.' it is not necessary

that the occupation should be such that a mere stranger
passing the land should know that some one was assert-
ing title to or dominion over it. It is not necessary that
the land be cleared or fenced, or that any building be
put upon it. The possession of land cannot be more than
the exercise of exclusive dominion over it. 2 Wood on
Limitations, sec. 267. In the instant case the record
shows that the lands in controversy, from 1885 until
1900, when appellant entered into actual occupancy,
were what are denominated 'wild lands,' lying in the
midst of a vast area of swamp woodland, not susceptible
to occupancy, improvement or cultivation, or of any re-
munerative or productive use. The test of what consti-
tutes adverse possession of such property must of course
be different from that which would be applied with ref-
erence to cultivated lands or property susceptible of ac-
tual use and occupation. The question is, did the per-
son claiming to hold adversely exercise towards the prop-
erty the same character of control which he used toward
property actually his, and which he would not have used
over property which did not belong to him? In this case
Rozell had the land assessed to him, and he and those
claiming under him, for a long term of years, paid all
the taxes on the property without question from appellee
or any one else. This of itself is a potential fact in
proof of the hostile assertion of title by the party paying
the taxes. *Ewing* v. *Burnet,* 36 U. S. (11 Pet.) 41, 9 L. E.
624, *Fletcher* v. *Fuller,* 120 U. S. 534, 552, 7 Sup. Ct. 667,
676, 30 L. Ed. 759, 764; *Holtzman* v. *Douglass,* 18 Sup. Ct.
65, 42 L. Ed. 466.

A possession which is adverse and actually known to
the true owner is equivalent to a possession which is
open and notorious and adverse. *Dausch* v. *Crana,* 109
Mo. 336, 19 S. W. 61; *Clark* v. *Gilbert,* 39 Conn. 94; *Alex-
ander* v. *Polk,* 39 Miss. 737; *Ford* v. *Wilson, supra.* The
doctrine is concisely stated in this form: 'If the owner
have actual knowledge that the possession is adverse to
his title, the occupancy need not be open, visible and

notorious. Notoriety is important only when the adverse character of the possession is to be brought home to the owner by a presumption. See 1 Cyc., p. 999, par. c. and cases cited.''

There could hardly be more accurate statement of the facts in the case at bar than the above in the case of *McCaughan* v. *Young,* and hence the rules laid down there are equally applicable here. The Blakes, as shown by the evidence, exercised over this land exactly the same character of ownership and control as that exercised over the rest of their wild lands. They cut timber, paid taxes, gave mortgages, leased the land for pasturage and for hunting privileges. It was low and swampy—"a primeval forest, a howling wilderness,'' as counsel says in his brief.

Furthermore, each and every one connected with this title on the side of appellants had direct knowledge of the claim and of the acts of ownership exercised by the Blakes. Year after year beginning with 1858 for the north half and with the year 1873 for the southwest quarter, as shown by the evidence, the land was assessed to the Blakes and they paid the taxes. The assessment rolls and tax records went through the hands of the county officials and of the board of supervisors. A map was adopted by the county, through its board of supervisors, with the name ''Mary S. Blake'' written across this very land, indicating her ownership of same. The land was universally recognized throughout the neighborhood as being that of the Blakes.

We submit that counsel is in error when he states that any part of the case of *McCaughan* v. *Young,* has been overruled by that of *Leavenworth* v. *Reeves,* 64 So. 660.

It is held in the following cases that ten years' occupation, as declared in the statute, vests a ''full and complete title,'' upon which the land can be recovered in ejectment without further evidence than the facts showing such possession. *Ellis* v. *Murray,* 28 Miss. 129;

*Ford* v. *Wilson,* 35 Miss. 490; *Davis* v. *Bowmar,* 55 Miss. 671.

"Title by adverse possession is as available for all purposes as a perfect record title." *Scottish-Am. Mort. Co.* v. *Butler,* 54 So. 666.

In our humble judgment we have shown. 1. That under the authority conferred upon him by the board of supervisors, the president had no right to convey to Philip H. Feld the north half of the section; 2. That if the argument of opposing counsel is correct there is a break in appellants' chain of title as to all the land, in that the deed from Feld to Foster fails to place the land in the Choctaw District; 3. That the sale by the state to Benson Blake dated May 17, 1854, was a valid sale; 4. That if not, then this sale and that of July 1, 1867, furnished color of title upon which to base possession; 5. That appellees' possession was of such character as to meet the requirements of the law, the nature of the land being considered; 6. That the appellants and all their predecessors in title had knowledge, actual or constructive, of appellees' claim of ownership and possession.

And we therefore respectfully urge that the decree of the lower court should be sustained.

STEVENS, J., delivered the opinion of the court.

Appellants sued in equity to confirm title claimed by them to the lands described as the north half and southwest quarter of section 6, township 17, range 4 east, Choctaw district. The defendants made their answer a cross-bill, praying similar relief. The lands lie just north of the Yazoo river in Warren county; and both parties agree that the title passed from the United States to the state of Mississippi under the act of Congress approved September 28, 1850 (chapter 84, section 4, 9 Stat. 519), and were thereafter ceded by the state of Mississippi to the county of Warren by an act of the legisla-

ture approved October 19, 1852, "for the purpose of constructing, repairing and keeping up the levees in that county." Laws Called Sess. 1852, ch. 68. The board of police were authorized to sell these lands, the deeds to be executed by the president under the order of the board. Appellants and appellees both claim title to the north half of the section through conveyances from Warren county; appellants claiming through mesne conveyances based on the deed from the board of supervisors of Warren county to Philip H. Feld in December, 1902, and appellees claiming by descent from Benson Blake, who is alleged to have purchased the north half of the section in 1858. Appellants deraign a perfect chain of title. Appellees are unable to produce the deed from the board of police to Benson Blake and which they say has been lost or destroyed and cannot now be produced. In support of the existence of this missing deed, they rely upon an order on the minutes of the board of police dated April 17, 1858, reciting, among other proceedings:

"The following swamp lands in Warren county, Miss., have been sold and the purchase money paid to the levee commissioner and deeds are asked to be made to the purchaser, to wit: . . . Benson Blake, north half 6, township 17, range 4 east, three hundred and twenty acres at fifty cents, one hundred and sixty-two dollars. Ordered, that the president execute deeds to the foregoing parties respectively for said lands purchased by them."

Appellees claim title, not only through this lost or missing deed, but by adverse possession.

Appellants make the same deraignment of title to the south west quarter of the section as they do to the north half. Appellees, as to the south west quarter deraign title from the sale of this land to the state, for taxes, July 1, 1867; and by mesne conveyances to them of said tax title. They also claim title to this, as well as the north half of the section, by adverse possession. Sever-

al witnesses were introduced to establish adverse posses-
sion by appellees; and the chancellor found, as a matter
of fact, that appellees held such possession of all the
lands as their character would reasonably permit. He
further held that the purchase of the north half of the
section by Benson Blake, the payment of the purchase
price, the order of the board directing the president to
execute the deed, and the subsequent possession, confer
a good and perfect title to the north half of the section.
The chancellor further found that appellants were not
innocent purchasers for value and without notice of the
claim of appellees. The decree of the court below can-
celed the deeds under which appellants claim, and con-
firmed appellees' title.

There is ample evidence to justify the finding of the
chancellor that appellants had notice of appellees' claim.
It is shown that Warren county adopted an official county
map, on the face of which claim of ownership by the
Blake family is indicated. The sectional index used by
the county reflects all the conveyances affecting these
lands, and shows numerous deeds executed by the Blakes
from time to time. The property has been assessed to,
and taxes paid by, the Blakes all the while.

The chancellor was likewise correct in his holding that
appellees owned the legal title to the north half of the
section. The order of the board of police of April 17,
1858, shows that Benson Blake bought and paid for this
portion of the land; and the president was directed to
execute to him a deed in pursuance of this purchase.
Benson Blake had the lands assessed to him, and paid
taxes every year continuously until his death, and his
heirs have continued to pay; and, since 1890, have cut and
sold timber, leased the lands for pasturage purposes,
granted hunting and fishing privileges, and otherwise
used these swamp lands as any reasonably prudent owner
would do under like circumstances. But for the Consti-
tution of 1890 (section 104), providing that the statute
of limitation here involked shall not run against the state

or any subdivision thereof, appellees would have had conferred upon them title by adverse possession; and the chancellor would have been justified in so finding. The case, however, as to the north half is controlled by the recent decision of this court in *Caruth* v. *Gillespie et al.*, 68 So. 927. The law, from the long-continued possession of the Blake family, such as is disclosed by this record, presumes the execution and delivery of the deed under which Benson Blake claims. This presumption is not only one of law, but is supported by the order of the board of police, which in itself is sufficient to characterize Benson Blake as the equitable owner. It cannot be said that appellees have no title simply because they are unable to produce a deed executed half a century ago. This salutary presumption of the law, under the circumstances of this case, protects appellees in the use and enjoyment of this old estate, and at least shifts the burden to appellants to show that the deed was not in fact executed.

As to the southwest quarter of the section, the case is different. The pronounced acts of possession, proved by appellees, occur subsequent to 1890. Prior to that time, the Blake family had prosecuted Dennis Burns for trespass on the lands; had given the land in for assessment, paid the taxes continuously, and executed deeds of trust covering the land. There is shown no clearing, cultivation, or improvements of any kind, prior to 1890. The owners, according to the positive evidence, cut no timber for commercial purposes or otherwise. There was no act of possession calculated to arouse the attention of the true owner. The Constitution of 1890 stopped the running of the ten-year statute of limitations. Appellees do not claim title to this portion of the land through any conveyance from the board of police of Warren county in accordance with the act of 1852. The only color of title is through the tax sale to the state in 1867, record of which is in existence. So far as the record of this case discloses, this portion of the land belonged to Warren

county, in trust, for the purpose mentioned by the act
of 1852. It was such land as was not subject to sale for
taxes. The tax sale relied on, therefore, is ·void and con-
veyed no title.

A careful examination of the record convinces us the
chancellor erred in holding that appellees had title to
the southwest quarter of this section, by adverse posses-
sion, under color of title furnished by this tax sale. In-
asmuch as they have neither the paper title nor title by
adverse possession, the decree of the court below as to
this portion of the land will be reversed. The decree will
be affirmed as to the north half of section 6, and reversed
as to the southwest quarter, and decree rendered here in
favor of appellants for the southwest quarter of the
section.

*Affirmed.*

*Reversed.*