## SUMRALL *v.* STATE.

In Banc. May 22, 1950.

No. 37515 (46 So. (2d) 549)

Suggestion of Error Sustained in Part, November 6, 1950 (48 So. (2d) 502).

The original opinion, withdrawn in part, was as follows:

**Lee, J.**

Sumrall had been in possession of the land involved in this suit for two or three years. It was in sixteenth section, and he presumed that his title rested on a 99 year lease. Moreover, he had heard that the lease would expire in 1948. Consequently, in 1947, he made application to the Board of Supervisors of Walthall County for a twenty-five year lease of said land. The board, at its January 1948 meeting, approved a ten year lease to him; but the transaction was not consummated. In the meantime he secured the services of an attorney, with the result that he filed this suit in May, 1948.

In his bill of complaint, the title was deraigned, and the prayer of the bill was (1) for confirmation of a fee simple title in him to 287½ acres, described as NE¼ and N½ of SE¼ and SW¼ of SE¼ less 2½ acres in SE corner, and all of the SE¼ of SE¼ lying north of the public road in Section 16, Township 1 N, Range 10 E; and (2) to cancel a lease or leases to 120 acres described as the E½ of NW¼ and NE¼ of SW¼ of said Section 16, Township 1 N, Range 10 E.

The State of Mississippi, Walthall County, J. A. Bryan, Winfus Ellzey and Humble Oil and Refining Company, a corporation, were made defendants. The Attorney General, representing the State, answered that

the right of the complainant to have the court grant the prayer of the bill should, under Section 2, Chapter 309, Laws 1940, be determined by the court on a hearing thereof, and agreed to such a hearing at any time. The Oil Company, by its answer, disclaimed any interest in the land. Walthall County and Bryan, in their answers, denied the allegations of the bill, and, by demurrer, challenged the complainant's rights by several questions of law.

The cause was heard on original bill, answer and demurrer, and oral and documentary · evidence. The court denied relief and dismissed the bill with prejudice. From the decree entered, Sumrall appealed.

The principal assignment of error is that the decree is contrary to the law and the evidence.· Hence, it is necessary to consider the substantial facts.

The deraignment of title showed that on May 8, 1883, S. Gwin, Auditor of Public Accounts, executed a forfeited tax land patent to D. M. Walker for certain lands, including the 287½ acres above described. This conveyance was to Walker, his heirs and assigns "forever", with warranty, and without limitations. The proof showed that he took possession, and he and his successors in title occupied this land for more than fifty-five years, and dealt with it as if they had full title.

The case of Jones v. Gulf Refining Co., 202 Miss. 705, 32 So. (2d) 435, 436, 34 So. (2d) 735, is a complete answer to the question before us. It is identical both in principle and in fact, except as to dates and persons. The same S. Gwin, Auditor, there, on July 4, 1881, executed a like patent to the grantee and "his heirs and assigns forever", with warranty, and without limitations. The court held that there was authority to execute the patent under the express provisions of Section 566, Code 1880, and that the conveyance was sufficient to divest the State of its title. The Court indulged the presumption of regularity and said: "Thus the presumption arises that

before January 1, 1874 the sovereign had parted with the fee-simple title, as under the Code of 1871 it could have done, and the presumption is further that it was a fee-simple title, not a lease, inasmuch as the patent aforesaid conveyed a title in fee simple forever and not a lease." The whole matter was again considered on suggestion of error and the Court said: "As stated in our former opinion, the fact that the conveyance by the State in 1881 was a full warranty deed sufficiently evidences the extent of title which the State had theretofore acquired."

Thus, it follows in this case, that the State divested itself of title to the 287½ acres as above described. This being true, it is obvious that the mere fact that Sumrall presumed that his title rested on a 99 year lease, and that he made application for a lease of the same, as above mentioned, did not divest himself of title. Such presumption and application neither reinvested nor conferred title in the State. Besides, the provisions of the Code of 1892, Section 4148, now Section 6596, Code 1942, being the statute for 25 years of adverse possession, came to the aid of the complainant. Foster v. Jefferson County, 202 Miss. 629, 32 So. (2d) 126, 568.

The lower court was in error in dismissing the complainant's bill. On the contrary, the court should have confirmed his title against all named defendants to the above described 287½ acres. Hence, the decree of the lower court is reversed, and one will be rendered here to effectuate that result.

 As to the remaining 120 acres, as above described, neither the deraignment nor the proof showed that the title to that land had passed out of the State. While the board of supervisors agreed to lease all of this land to Sumrall, there was no consummation of the transaction. Subsequently, at its December 1948 meeting, the board rescinded its order by which it offered to lease the land to Sumrall, and thereupon approved a lease thereof to another. There was no appeal to the circuit court

from such judgment of the board, and it can not now be collaterally attacked. In re Savannah Special Consolidated School District of Pearl River County, Miss., 44 So. (2d) 545; Johnson et al. v. Board of Supervisors of Yazoo County et al., 113 Miss. 435, 74 So. 321; Hinton v. Board of Supervisors of Perry County et al., 84 Miss. 536, 36 So. 565; Wofford et al. v. Williams, Tax Collector, 110 Miss. 637, 70 So. 823; Harvey v. Covington County, 161 Miss. 765, 138 So. 403; and Green et al. v. Hutson et al., 139 Miss. 471, 104 So. 171.

Thus the decree of the lower court affecting the said 120 acres is affirmed.

Affirmed in part, and in part reversed and rendered.

ON SUGGESTION OF ERROR.

**John E. Stone,** Assistant Attorney General, for the State.

Breed O. Mounger, for Walthall County.

W. H. Watkins, Jr., Roland D. Marble, and Price, Phillips & Alford, for Sumrall.

**Hall, J.**

After a full and careful consideration of the suggestion of error we have reached the conclusion that the same is well taken and that the former decision herein, 46 So. (2d) 549, is erroneous insofar as it reverses the decree of the lower court and awards unto appellant the

title to the 287½ acres of land situated in Walthall County, Mississippi, and described as NE¼ and N½ of SE¼ and SW¼ of SE¼ less 2½ acres in SE corner, and all of SE¼ of SE¼ lying north of the public road in Section 16, Township 1 N., Range 10 E.

Section 6596, Code of 1942, provides: "Adverse possession for a period of twenty-five years, under a claim of right or title, shall be prima facie evidence in such case that the law authorizing the disposition of the lands has been complied with and the lease or sale duly made. If the claim be under a lease, the time at which the lease expires shall be fixed by the court." It will be noted that under this statute there must be not only adverse possession for a period of twenty-five years but also this possession must be under a claim of right or title. The statute first appeared as Section 4148, Code of 1892, under the chapter pertaining to sixteenth section lands. It appears in the 1942 Code under the chapter on schools and under the subdivision thereof dealing with sixteenth and lieu lands. It is well known that most of the claims to sixteenth section lands are under ninety-nine year leases, many of which were never recorded and have been lost, misplaced or destroyed, and that only a comparatively few of such claims are based upon grants of the whole title in fee. This statute was plainly designed to protect the claimants to the unexpired portion of ninety-nine year leases as well as claimants to the absolute fee simple title, but in either event the possession of the claimant must be adverse and must be under a claim of right or title. Obviously one who holds twenty-five years adverse possession and claims the same under an unexpired lease cannot under the statute establish a fee simple title to the land, for, if he could, the state would eventually lose its title to all the sixteenth section lands in the state. Where sixteenth section lands are under lease there is a reversionary interest in favor of the state or county, and referring thereto in con-

nection with the twenty-five year statute, this court said in Weiler & Haas v. Monroe County, 76 Miss. 492, 25 So. 352, 353: "The statute of limitations, whatever its effect in favor of appellants as to the lease, did not run against the reversion." To establish absolute title to such lands the possession must be under a claim to the absolute fee simple title. This was clearly recognized in Foster v. Jefferson County, 202 Miss. 629, 32 So. (2d) 126, 568, and in Jones v. Gulf Refining Co., 202 Miss. 705, 32 So. (2d) 435 and 34 So. (2d) 735, upon which two decisions the original opinion in this case rests.

 This brings us to the question whether under the facts presented by the record now under review the appellant herein claimed the above described land in fee simple or only under an unexpired lease. It throws some light on the question to first consider the conveyance from the State of Mississippi to D. M. Walker, dated May 8, 1883, in the light of the statutes then existing. It is a tax forfeited land patent and recites that the lands in question were therefore sold to the State for taxes on March 4, 1878, and that D. M. Walker "desires to purchase said tract of land under the provisions of the laws of Mississippi in such cases made and provided." It continues that for a consideration of $23.37 paid, the State "by these presents does bargain, sell and convey unto the said party of the second part, his heirs and assigns forever, the aforesaid tract of land as above described to have and to hold the same to said party of the second part, his heirs and assigns forever. The State of Mississippi hereby warrants the title to said lands according to the statute in such cases made and provided and not otherwise." The conveyance is signed by S. Gwin, Auditor of Public Accounts. At the time of the execution of this patent, the only authority of the Auditor of Public Accounts to sell tax forfeited lands was vested by Section 561, Code of 1880, which provides that upon application, etc., "he shall execute to the person redeem-

ing or purchasing such land a conveyance of the title of the state thereto . . . and when duly executed, as herein provided, shall pass all claim or title of the state to such land as it conveys.'' There was no authority in the Auditor to warrant title to any land conveyed nor to convey any title further than what was actually owned by the State, and this patent expressly conveyed and warranted ''the title to said lands according to the statute in such cases made and provided and not otherwise.''

The statute for assessment and sale of sixteenth section lands existing at the time of the purported tax sale on March 4, 1878, appears as Section 1679, Code of 1871, and provides: ''All school lands known as the sixteenth sections, reserved for the use of schools, or lands reserved or granted in lieu thereof, or a substitute for said sixteenth sections, shall be liable, after the same shall have been leased, to be taxed as other lands are taxed during the continuance of such lease; but in case of sale thereof for taxes, only the title of the lessee or his assignee shall pass by such sale.'' The four sections of the 1871 Code immediately preceding the quoted section make provision for the making up of an assessment roll in a manner substantially the same as that presently in use. The quoted section appears in exactly the same verbiage as Section 494, Code of 1880. Under this statutory scheme then in effect it was the duty of the county tax assessor, if these lands were under lease on January 1, 1877, to place them on the assessment roll for taxation exactly the same as all other lands in the county, and if the taxes were not paid in due course it was the duty of the tax collector to sell the same on March 4, 1878, for the unpaid 1877 taxes, just as all other lands were sold for taxes, and if there were no bidder it was his duty to strike off the same to the State and to so certify on his list of sale, but as to the sale the above quoted statute specifically enjoined that ''in case of sale thereof for taxes, only the title of the lessee or his assignee shall pass

by such sale." The statute does not say that in executing a tax deed or certifying a list of lands sold to the State the tax collector shall show that only a leasehold interest is conveyed, but it simply says that in case of a sale for taxes only the title of the lessee or his assignee shall pass by such sale. Consequently under the tax patent involved in this case the State did not attempt to convey and could not convey any title further than such title as had become vested in the State by virtue of the tax sale of March 4, 1878. What that title was we do not know for the appellant failed to offer any proof on the point. It could have been a fee simple title, and just as easily it could have been the title to an unexpired leasehold interest.

The appellant relies upon possession by himself and his predecessors under the aforesaid twenty-five year statute of limitations. As heretofore pointed out, that possession must have been under a claim of the absolute title to the lands before he could have the fee simple title established in him by court decree. This land was acquired by appellant's father in 1929, later by his sisters, later by their husbands, and finally by appellant himself. Appellant testified positively and without hesitation that none of these parties had ever claimed the fee simple title to the land, that all of them claimed under an unexpired ninety-nine year lease, that he took title under a claim of such a lease and continued to claim it under such a lease until the year 1947 when he applied to the board of supervisors for a renewal thereof, and then had an investigation made to ascertain when his lease would expire. This investigation disclosed the aforesaid forfeited tax land patent and thereupon in 1947 he for the first time made a claim to the fee simple title. Up until then all of them had dealt with it as if they owned only an unexpired leasehold interest in it. None of them would cut or undertake to sell any timber from the land, and some of them applied to the board of supervisors to

purchase the timber. There was never any claim of the entire title until 1947 and all their dealings with the land were such as to lead the officials to believe that no interest was claimed therein except an unexpired leasehold. Under this testimony and these admissions the appellant wholly failed to make such a showing as to justify establishing his fee simple title to these lands. We have therefore concluded that the former opinion herein is in error in adjudicating appellant to own such a title and in that respect the same is withdrawn and the decree of the chancellor is affirmed in its entirety.

The State has filed a brief wherein we are asked to overrule the decision in Jones v. Gulf Refining Co., supra, but in view of our conclusions we do not reach a consideration of that point.

Suggestion of error sustained, former opinion withdrawn, and cause affirmed.

**Kyle, J.**, took no part in this decision.

**Lee, J.** (dissenting).

### On Suggestion of Error.

With deference, I dissent against the conclusion reached by the Court in this case.

The Constitution of 1869 contained no prohibition against the sale of sixteenth section land. The Legislature, by the enactment of Sections 2015 to 2019, inclusive, Code 1871, expressly authorized the sale of the fee to such lands. A condition precedent was an affirmative vote of the qualified electors of the township. The several necessary steps were specified. The school directors were authorized and required to execute all conveyances.

In Foster v. Jefferson County, 202 Miss. 629, 32 So. (2d) 126, 568, this Court recognized the validity of the

sections, supra. The sale, in that case, was not in conformity with the statute in at least two respects: (a) the deed was executed by the superintendent instead of the school directors, and (b) no appraisement appeared on the minutes of the board of supervisors. However, the treasurer's books showed that the consideration had been paid. Under these circumstances, this Court invoked the presumption of regularity, and held that the State had parted with its fee to the land. It fortified its conclusion to invoke such presumption by observing that the grantees therein, and their successors in title, had actually claimed the fee thereafter for more than twenty-five years after the enactment of the statute of limitations by the Code of 1892, now Section 6596, Code of 1942.

This Court, in Jones v. Gulf Refining Company, 202 Miss. 705, 32 So. (2d) 435, 436, 34 So. (2d) 735, again invoked the same presumption of regularity. Although the record failed to show that the State had parted with its fee to the land there in question, this Court presumed that it had done so prior to the year 1874, for the taxes of which year, the land had been sold in 1875. And this Court held that, by reason of its purchase at the tax sale in 1875, the State had acquired the fee, and it, therefore, had the power to, and did, by its patent, convey the fee. Hear the solemn construction of that instrument by this Court as follows: "On July 4, 1881, S. Gwin, the Auditor of Public Accounts, executed and delivered to A. B. Jones a forfeited tax land patent to the lands here in question, the grant being of the described land as a 'tract of land', *there being no words of limitation of the estate granted to the effect that it was an unexpired lease, but the grant was to the grantee and 'his heirs and assigns forever'*. It recited that the land 'was sold on the 10th day of May 1875 for the taxes due the State.' The Auditor was authorized and empowered to execute the patent under the express provisions of Section 566, Code 1880." (Emphasis supplied.)

This Court solemnly declared that the State, in that case, by its patent, conveyed a title in fee simple forever and not a lease; "Thus the presumption arises that before January 1, 1874 the sovereign had parted with the fee-simple title, as under the Code of 1871 it could have done, and the presumption is further that it was a fee simple title, not a lease, inasmuch as *the patent aforesaid conveyed a title in fee simple forever and not a lease.*" (Emphasis supplied.)

Hear again the solemn statement of this Court that the instrument in that case was a warranty deed, after it had further and maturely considered the same on Suggestion of Error: "As stated in our former opinion, *the fact that the conveyance by the State in 1881 was a full·warranty deed sufficiently·evidences the extent of title which the State had theretofore acquired.*" (Emphasis supplied.)

In the case under consideration, we have an instrument exactly like the one in Jones v. Gulf Refining Company, supra, except the name of the patentee, the amount of the consideration, the date, and the description of the land. In that case, the land was sold in 1875 for the taxes of 1874. In this case, the land was sold in 1878 for the taxes of 1877. In that case, the patent was issued in 1881. In this case, the patent was issued in 1883. In that case, S. Gwin, Auditor, executed and delivered the patent. In this case, the same S. Gwin, Auditor, executed and delivered the patent. The substantial provisions are set out in the majority opinion. The basis for the conveyance and all of the covenants are identical. If the conveyance in that case carried the fee, it must do so in this case. The majority opinion does not overrule that case, but holds that the instrument in this case—identical in terms and covenants—is not sufficient to convey the fee. I am unable to comprehend the reasoning which, in one breath, declares fish to be fish, and, in the next breath, adjudicates fish to be fowl.

The majority opinion tries to write around this glaring impasse by the necessity for adverse possession. It is true that in Jones v. Gulf Refining Company, supra, the original bill of complaint alleged that the patentee and his successors in title had claimed the title throughout the years. The demurrer, of course, admitted all allegations. But I do not take it that the Court, by the mention of this fact, was undertaking to make it the basis of the decision. If the State conveyed the fee title, it did not have anything left. Among individuals, a grantee in a warranty deed and his successors in title need not thereafter and forever claim and assert their title, lest the original grantor may decide to repudiate his deed and take their property away from them. How far would such a grantor get in either a court of law or of equity? I concede that an occasional avaricious individual might be found who might try such course, if he thought he could succeed. But the sovereign State, as such, is free from greed and avarice. It is a composite of the conscience of two million souls. How the sovereign State can take from one of its citizens land which it had theretofore conveyed in fee simple to a predecessor in title is absolutely beyond my comprehension. I protest against it as vehemently as I know how.

I submit this further proposition on the question of adverse possession: Section 211, Constitution of 1890, enjoined upon the Legislature the duty to enact laws to ascertain the true condition of Sixteenth Section lands. This section was evidently adopted by the Constitutional Convention because it was known that, during the period of 1871 to 1878, the State had lawfully parted with its title to some of these lands. The Legislature, in compliance with that mandate, passed legislation to effect that purpose. Chapter 129, Code of 1906. The duty was imposed upon boards of supervisors to prosecute suits to establish and confirm these titles. Yet, for a period of more than forty years, the board of supervisors of Walthall County

did nothing to oust Sumrall and his predecessors in title. They asserted claim to the fee only after appellee instituted his suit to confirm the title.

The solicitude of the majority opinion that holders of the unexpired lease might, by adverse possession, undertake to claim the fee, in my opinion, is wholly unfounded. Manifestly, an adverse claimant can obtain such estate only as the adversary possessed. It was during the period from 1871 to 1878 only that these lands could be sold. Consequently, danger on that score is negligible indeed.

I think the majority opinion misconceives the force and effect of the provision in the instrument that "The State of Mississippi hereby warrants the title to said lands according to the statute in such cases made and provided and not otherwise." The State, from a valid tax sale of the property of an individual, acquires the fee. Where the State has parted title with sixteenth section land, and subsequently such land, as the property of an individual, is validly sold to the State for nonpayment of taxes, the State acquires a fee thereto just as it would any other land. To me, such provision effects no limitation. Its significance is obvious: If the State actually had only part title, then the patent conveyed only what the State had; if the sale under which title was obtained was, in fact, void, the State did not assume to make the title good. But, if the State's title was in fee, then the patent passed the fee. Such a construction is in line with Section 561, Code 1880, which provides that upon application, etc., the Auditor "shall execute to the person redeeming or purchasing such land a conveyance of the title of the state thereto . . . and when duly executed, as herein provided, shall pass *all claim or title of the state to such land as it conveys.*" (Emphasis supplied.)

I cannot see how the failure of Sumrall to claim the fee title, or his presumption that he was operating under

a lease, could have the effect of divesting him of the fee title which, I think, the State had conveyed to the original patentee, and which he received by mesne conveyances. Neither do I think that the lack of claim and his presumption operate to reinvest or confer title in the State.