BURKLEY, et al. *v.* JEFFERSON COUNTY, et al.

Apr. 7, 1952.

No. 38298 (58 So. (2d) 22)

**Truly & Truly,** for appellants.

840

**Corban & Corban,** and **Matthew Harper, Jr.,** Assistant Attorney General, for appellee.

**Roberds, J.**

Burkley, the appellant, filed the bill in this cause to remove, as a cloud upon his title, the claims of Jefferson County and the State of Mississippi to 374 acres of lieu school lands located in said county. Burkley appeals from dismissal of his bill.

The primary question is whether said County, as trustee of school lands, legally conveyed the fee to said lands. That is to be determined by the record and oral evidence, aided by appropriate presumptions arising out of the proof.

We now summarize the record evidence:

In May, 1871, the board of supervisors adopted a minute reciting that the county superintendent of schools had notified said board ''of an order of sale from the State Board of Education of school lands lying in T. 9, R. 2 W., Sec. 14, and to proceed in said sale according to law''. The board then appointed three persons to appraise the said lands ''according to law''. The designation of the township as 9 was an error. The school lands were located in Township 10. The designation of Section 14 was correct.

The next record is a minute of the supervisors rejecting notes which A. Luhm had proferred for the purchase of the school lands in Township 10, Range 2, "for want of good security and because they do not require that the interest on the purchase money shall be payable annually". It then directed that Thomas Reed, "late attorney for the School Board, be required to see that the notes are properly drawn".

The next record is a quitclaim deed from Luhm to H. B. McClure, conveying the land in question, dated January 31, 1877. That deed recites that the land conveyed is "the same tract of land purchased by said Luhm at a public sale of said described land on the 22 day of February A.D. 1873, being section 14 of said Township and School lands of said Township—the same having been offered for sale according to law by the Board of School Directors and by virtue of which said sale the said Luhm has ever since said 22 of February 1873 been in possession of the property".

On March 1, 1877, the supervisors executed to H. B. McClure a bond for title to said lands, which contained this recital: "The condition of this obligation is such that whereas the said McClure hath recently purchased by quitclaim deed from one August Luhm all the right, title and interest of said Luhm in and to * * *" the land in question, "being the same tract of land purchased February 22, 1873, by said Luhm at public sale made by L. Long, County Superintendent & more particularly described in the annexed plat of the same made by A. H. Watkins at the time of said above sale & whereas the said H. B. McClure hath also paid into the County Treasury a cash payment of One Hundred Dollars and given his four notes for two hundred dollars each dated March 1st, 1877, & due and payable respectively on the first of October, 1877, 1878, 1879 & 1880 with 10 percent interest from date until paid—interest on each note payable annually on the first of October—the same being for purchase of said described land so sold to said Luhm

as aforesaid & which he the said Luhm failed to pay for''.
The instrument then bound the supervisors to ''make to
said Luhm a good & perfect title by deed to said land
* * *'' on full payment of said notes.

On January 4, 1881, said board of supervisors executed
to H. B. McClure a warranty deed, purporting to convey
to him in fee simple, the said 374 acres of land, the con-
sideration being $880 paid, ''the said party of the first
part warranting the title to the same''.

On March 8, 1881, H. B. McClure executed to James M.
Ellis a warranty deed to the land. The consideration was
$880 paid by grantee January 4, 1881, ''due on my bond
for title from the Board of Supervisors of this Jefferson
County for the purpose of procuring a warranty deed to
the lands herein conveyed * * *'', giving the book and
page where the deed to McClure was then of record, and
the further consideration that the grantee cancel a trust
deed to secure $474.96 which McClure theretofore had
executed to Ellis.

On March 18, 1881, James M. Ellis executed a warranty
deed conveying the land to Gloster Knox, which recites
''* * * being the same land sold by the Board of Super-
visors by deed dated Feby. 22d, 1873, and purchased
at public sale on said date by August Luhm and said
Luhm failing to pay for the same and H. B. McClure
having purchased all the interest of said Luhm in and
to said lands, obtained from the Board of Supervisors
of said Jefferson County a Bond for title therefor, dated
March 1, 1877'', designating book and page where
recorded, ''which Bond for Title has been fully paid and
satisfied and the said Board on the 4 day of January 1881
conveyed said lands to the said H. B. McClure by deed
with covenants of general warranty of that date'', giving
book and page where recorded, and which land was sold
by McClure to the grantor ''with covenants of general
warranty''.

Gloster Knox and his wife executed a number of trust

deeds on the property, all purporting to convey the fee simple title thereto.

After Gloster Knox died his various heirs executed many conveyances, deeds, and trust deeds, all purporting to convey the fee. Finally the title got into Stacy C. Mosser through tax sales, his title being confirmed by the chancery court in 1919.

We now go back. The title bond and deed from the supervisors to H. B. McClure purported to convey the entire 374 acres. However, it appears these instruments should have excepted eight acres on the south side of the tract. No point is made on that and we mention it only for the purpose of further tracing the title to the south eighty acres and setting out pertinent provisions of the instruments conveying that eighty acre tract.

On December 22, 1877, the supervisors of Jefferson County conveyed to Rebecca Harris said eighty acres just mentioned. That deed recited that the entire tract of 374 acres was "sold in accordance with law by order of the Board of School Directors and struck off and conveyed by L. Long, County Superintendent, to one August Luhm, and whereas afterwards the said Luhm agreed with the consent of the Board of Supervisors of said County to sell a portion to-wit: 80 acres of said land to said Rebecca Harris and whereas the said Luhm having failed to meet his payments on said purchase and being thereby unable to make title to said Rebecca it became necessary and was agreed that said Rebecca should pay the purchase money for her said portion directly to the County & receive title bond from said Board", the instrument conveyed to her "in fee simple forever" title to said eighty acres.

Rebecca and her husband thereafter executed trust deeds on the property, one of which was finally foreclosed, and through mesne conveyances and tax sale the title finally got into Stacy C. Mosser, and was confirmed in him by the chancery court.

It might be added that in 1928 there was a purported tax sale of a part of the tract to Judge Jeff Truly, and he, and those claiming under him, executed a number of conveyances to the land covered by his tax deed, until finally, through many conveyances, all of the land was conveyed to Stanley E. Burkley, the appellant, by deed from the Receiver of Britton & Koontz National Bank of Natchez, Mississippi, in the year 1939.

In all there were more than forty conveyances of the property. All of these were recorded. All, except a timber deed to which we refer hereinafter, purported to convey the fee. Not a one, except the timber deed, makes reference to a lease.

Now as to the oral proof of possession. Naturally such evidence was limited. It could be given only by elderly persons. On this question complainant introduced six witnesses. Defendants offered none. These witnesses, in their personal recollection of acts of possession, could only go back to about the time Gloster Knox acquired title in 1881. But they did go back that far and some before that time. The substance of their testimony is that for that duration Knox and his heirs and those claiming through them had resided upon the property, had constructed homes, cultivated and raised crops thereon. It does not appear that a large amount of the land was actually worked, so far as these witnesses could recollect, but a substantial amount was cultivated from year to year. They could not be exact as to the acreage worked each year, or whether, as to some years, any at all was actually cultivated, but the general effect of the testimony is that these claimants to the property, for some seventy years prior to the trial, had resided upon and cultivated a substantial part of this land. It is low land near the Mississippi River and it is shown that often high waters destroyed, or greatly damaged, the crops and a small yield was realized, and considerable of the land was not capable of being cultivated.

As stated, defendants offered no oral proof to con-

tradict the acts of possession to which the foregoing witnesses testified. Defendants did show that the lands in controversy were lieu school lands, that a sale of timber on the lands was made to Burkley, as hereinafter discussed; that a tax sale had been made to the State, which we discuss hereinafter, and that an abstractor, engaged by the County, had prepared an abstract record of these school lands. And as to that abstract record it is of interest to note that the deed from the supervisors to Rebecca Harris is described as a "warranty". The record refers to the bond from the supervisors to McClure and calls that a "Bond for Title". We do not find an abstract of the deed from the supervisors to McClure.

Now, what is to be deduced from the foregoing?

 First, we think this is sufficient to establish that there was a sale and conveyance of the land to Luhm. Both the deed from the supervisors to McClure and to Rebecca Harris, as well as the title bond of the supervisors, recite that to be the fact. The recitals have existed for seventy years. They were of record. In addition to that, the County was a party to all of the instruments. These are ancient documents and the recitals therein are competent to prove the assertions of fact therein made. Nixon v. Porter, 34 Miss. 697; City of Lexington v. Hoskins, 96 Miss. 163, 50 So. 561; Jones v. Mayor and Board of Aldermen, 104 Miss. 449, 460, 61 So. 456; Westbrook v. City of Jackson, 165 Miss. 660, 145 So. 86; White v. Inman, Miss., 54 So. (2d) 375.

 Other ancient documents appear in the chain of title, as shown above, containing like recitals. Long, County Superintendent, had the power to execute the deed to Luhm. Foster v. Jefferson County, 202 Miss. 629, 32 So (2d) 126, 568.

Secondly, aside from whether a deed was executed to Luhm, it was not questioned that the supervisors executed the deeds to McClure and Harris. Appellees imposed certain specific reasons why they say these deeds did not convey title. We will deal with them.

■■■ They say the deed to Luhm must be produced. We think the fact of that deed can be shown without actually producing it. Hewling v. Blake, 110 Miss. 225, 70 So. 247. We have said we are of opinion the recitals in the many ancient documents here set out establish that fact in the absence of proof to the contrary. However, as also stated, actual conveyance to Luhm would not have been necessary. The sale was made to him and he transferred and assigned his rights to the land and in such case, even though no deed to him had actually been executed, the supervisors could recognize his grantees, and make conveyances to them upon their compliance with the terms of the sale, as it is evident they did do. In addition, all precedent conditions are presumed under the facts of this case to have been complied with. Foster v. Jefferson County, 202 Miss. 629, 32 So. (2d) 126, 568; Jones v. Gulf Refining Co., 202 Miss. 705, 32 So. (2d) 435, 34 So. (2d) 735; Lambert v. State, 211 Miss. 129, 51 So. (2d) 201.

■■■ Next appellees say the sale was void because it is shown the land was offered and sold in tracts greater than eighty acres, contrary to Section 2015, Code of 1871, providing that ''said lands shall be sold in quantities of not more than eighty acres''. There are two answers to the contention: First, this statute does not prohibit a conveyance of more than eighty acres to one person, nor does it prohibit one person from purchasing more than eighty acres. It simply provides that eighty acres is the largest quantity which may be offered for sale at any one time. There is no evidence the lands were sold in quantities of more than eighty acres. And, secondly, the Harris deed recites that the sale to Luhm was made in ''accordance with law'', and the deed from Luhm to McClure states ''the same having been offered for sale according to law by the Board of School Directors of said County''. Lambert v. State, supra.

■■■ It is next urged the record does not show that an appraisal was made. The record does show the ap-

pointment of appraisers and, under the circumstances here, it will be presumed they duly made their report. Lambert v. State; Jones v. Gulf Refining Co., and Foster v. Jefferson County, supra. Recital in such minutes of the situs of the land to be appraised as being in township 9 was clearly an error. It is admitted by all parties the lieu school lands were located in Section 14.

It is said the McClure and Harris deeds were void because it is not shown the credit payments were secured by a special mortgage on the lands sold as provided in Section 2018 Revised Code of Miss. 1871. As to Luhm, there is nothing to show that such special security was not required, and the presumption, under this record, is that the law was complied with. However, the deeds to Harris and McClure recite that the consideration was paid. There was no credit payment to be secured.

It is contended that the supervisors had no authority to execute the deeds. Article VII, pages 439 to 441, Revised Code of Miss. 1871, authorized and empowered the Board of School Directors to sell and convey school lands. Chapter 1, Laws of 1873, abolished the Board of School Directors, but provided that ''all power and authority heretofore vested in said Board of Directors are vested in the Board of Supervisors respectively * * *'', and Section 32 of the Act provided ''That the Board of Supervisors of the several counties * * are hereby invested with all the powers and duties heretofore conferred by law on Boards of School Directors, except as herein otherwise provided''. The same provision is contained in Section 32 of that Act. No exception was made as to power to convey school lands. Section 64 of Chapter XIV, Laws of 1878, repealed Article VII Revised Code of 1871 and Chapter 1, Laws of 1873, but in Section 66 of said Chapter XIV it was provided that ''no provision herein shall be construed to alter or invalidate any contract made under the existing laws previous to

the passage of this act''. The deed to Harris and the bond for title to McClure were made and entered into before March 5, 1878, effective date of said Chapter XIV. The supervisors had the power and authority to execute the deeds to these parties.

Appellees say all conveyances by the Supervisors were invalid because the minutes authorizing such action have not been offered in evidence. Under the facts of this case and the rules laid down in the Foster and Lambert cases, supra, all essential precedent steps to a valid conveyance are presumed to have been taken. The purpose of the enactment of Section 6596 Miss. Code of 1942 was to do that. Foster v. Jefferson County and Lambert v. State, supra.

We conclude that McClure and Harris acquired fee simple titles to the land in question and that such title finally vested in Burkley.

On July 7, 1941, Burkley, according to the minutes of the supervisors, made a proposition to the supervisors to purchase certain timber then upon the land, and on July 8, 1941, the supervisors executed to him a timber deed to such timber in consideration of $800. Appellee says this action estops and precludes the heirs of Burkley (Burkley having died after institution of this suit) from setting up a fee simple title to the lands. In Sumrall v. State, 209 Miss. 761, 46 So. (2d) 549, 48 So. (2d) 502, Sumrall had heard that his lease, as he supposed his title to be, would expire in 1948, and he made application for a twenty-five year lease. The board approved a ten year lease. However, the lease arrangement was not consummated. The court held that this did not estop Sumrall from claiming to be the fee simple owner of the property. The court said ''* * * it is obvious that the mere fact that Sumrall presumed that his title rested on a 99 year lease, and that he made application for a lease of the same, as above mentioned, did not divest himself of title''. It is true that on suggestion of error this opinion was withdrawn, 209 Miss. 761, 46 So. (2d)

549, 550. However, the principle just announced and the reasoning behind it were not altered by the final disposition of the case. Furthermore, in Lambert v. State, supra, the fact that one of the deeds in the chain of title of claimants described the estate owned by the grantor as "my unexpired leasehold" [211 Miss. 129, 51 So. (2d) 209] did not estop the parties from setting up a fee simple title. Besides, the elements of estoppel were not involved in the transaction between Burkley and the supervisors. There is no evidence the supervisors relied upon any act or representation of Burkley that he had only a leasehold estate. The supervisors knew as well as Burkley the type of estate he owned. In addition, the supervisors did not act to the detriment of the County. As a matter of fact, the County profited to the amount of $800. Izard v. Mikell, 173 Miss. 770, 163 So. 498; Barron v. Federal Land Bank of New Orleans, 182 Miss. 50, 180 So. 74; Day v. McCandless, 167 Miss. 832, 142 So. 486; Crooker v. Hollingsworth, 210 Miss. 632, 46 So. (2d) 541, 50 So. (2d) 355; Peeler v. Hutson, 202 Miss. 837, 32 So. (2d) 785.

Lastly, appellees urge that even though a fee simple title did vest by virtue of the conveyances above set out and also under adverse possession under the twenty-five year statute, that there was a sale of the lands on June 4, 1928, to the State for delinquent drainage taxes which vested title in the State and divested it out of all persons claiming title prior to that date. That tax sale was void, first, because the description was inadequate in that the section in which the land was located was not given, and, second, it was stipulated by counsel that the advertisement gave the date of sale as June 6 whereas the sale took place on June 4th, 1928.

Reversed and judgment here for appellants.

**Alexander, Hall, Lee** and **Holmes, JJ.,** concur.

**Kyle, J.,** took no part.