# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2002-CA-00122-SCT

*BOARD OF EDUCATION OF CALHOUN COUNTY, MISSISSIPPI*

*v.*

*JAMES SIDNEY WARNER, GWENDOLYN V. WARNER, OLIVER POE, EARNESTINE WINTER, NANCY POE AND LISA POE BAKER*

| | |
|---|---|
| DATE OF JUDGMENT: | 12/20/2001 |
| TRIAL JUDGE: | HON. C. MICHAEL MALSKI |
| COURT FROM WHICH APPEALED: | CALHOUN COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | ROBERT H. COMPTON |
| | CHARLES JIM BECKETT |
| ATTORNEYS FOR APPELLEES: | DAVID L. CALDER |
| | KENNETH A. RUTHERFORD |
| NATURE OF THE CASE: | CIVIL - REAL PROPERTY |
| DISPOSITION: | REVERSED AND REMANDED - 06/26/2003 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE SMITH, P.J., WALLER AND COBB, JJ.**

**COBB, JUSTICE, FOR THE COURT:**

¶1.     This suit involves a land title dispute between the Calhoun County Board of Education (the Board) and various members of the Poe and Warner families (collectively, Poe and Warner). The Board brought suit in the Calhoun County Chancery Court to quiet and confirm title to three tracts of Calhoun County 16th section land in October 1991.[1] Following a hearing on February 11, 1992, the original chancellor found

---

[1]Weyerhauser Corporation, which originally claimed Tract 1 of the disputed land, was dismissed from the proceedings. The chancellor's memorandum opinion of December 10, 1999, confirmed title to the Weyerhauser tract in the Board. Thus, the disposition of Tract 1 is not an issue in the present case.

that the parties agreed that the matters before the court "primarily involve[ ] a question of law," and that a motion for summary judgment would thus be an appropriate action. In May 1998, when Poe and Warner moved for summary judgment, the Board promptly filed a counter-motion for partial summary judgment and responded to Poe and Warner's motion. The case was transferred to a special chancellor,[2] who heard argument on the summary judgment motions on October 19, 1998, but no transcript of this hearing is before the Court. The chancellor found for Poe and Warner in his judgment entered on March 6, 2000, and denied the Board's M.R.C.P. 52(b) and 59 motions.

¶2.     The Board now appeals the chancellor's award to Poe and Warner, listing thirteen assignments of error which we have distilled into three: (1) whether the lands were adversely possessed during a period when adverse possession against the State was legal; (2) whether the presumption of grant applies to the present facts; and (3) whether the Secretary of State should have been joined as a necessary party. We conclude the Secretary of State should have been joined as a necessary party, and we reverse and remand for entry of an appropriate judgment consistent with this opinion.

## FACTS

¶3.     Tract 2, claimed by the Poes, and Tract 3, claimed by the Warners, are the disputed properties in this appeal. Two underlying facts provide the foundation for the chancellor's award of fee simple title to Poe and Warner: (1) that the Calhoun County Courthouse burned down in 1922, destroying many original records; and (2) that from 1871 to 1878 the State authorized the conveyance in fee simple of 16th Section lands. *See* Miss. Code §§ 2015-19 (1871), *repealed* 1878 Miss. Laws ch. 14 § 64; **Lambert**

---

The remaining lands, being Tracts 2 and 3, are claimed by members of the Poe and Warner families, respectively.

[2]The record is silent on when Judge Michael Malski was appointed, though various inferences support 1996.

***v. State***, 211 Miss. 129, 139-40, 51 So. 2d 201, 204-05 (1951) (discussing these statutes). Poe and

Warner claim, inter alia, that their title to the disputed tracts dates back to such a conveyance by the State.

## A. EVIDENCE OF POE AND WARNER'S CLAIM

¶4.     Tract 2, a plot of some 99.8 acres,  is claimed by the Poe family and was conveyed in three

parcels, which are identified herein as 2(a), 2(b), and 2(c).  The asserted chains of title to Tract 2 are not

complete, and no pre-1900 deeds to any of the parcels are found in the record, they having been

supposedly consumed by the 1922 courthouse fire.  Rather, the Poes rely on abstracts of title and other

similar documents from the Secretary of State's office and from the Calhoun County sheriff's record of tax

sales, together with an affidavit by Larry Winter, a Poe descendant.  Winter's affidavit claims that "the L.F.

Poe Estate and its predecessors in title have been in continuous possession of the questioned land . . . since

1878," making uses of it similar to those asserted by the Warners.  Winter's mother "continues to live on

the property in a house originally constructed before her birth in 1917."  Winter also asserts that ad valorem

taxes have been paid on the land since 1878.[3]

¶5.     Tract 3, totaling some 167.8 acres, was conveyed in parcels identified as parcels 3(a-e).  As with

the Poes' claim to Tract 2, the Warners' claim to Tract 3 is supported by abstracts of title for the late 19th-

century period which is of principal interest in this case, without any title deed in the record until 1938.  The

Tract 3 chains of title are likewise incomplete even in abstract.

¶6.     The Warners cite the same documents as the Poes, plus an affidavit by defendant James Sidney

Warner.  Warner claims that 3(a) and 3(b) have "been in private possession and conveyed in fee simple

since the 1870's" and that the Warners have "been in continuous possession of" 3(a) since 1890, and "in

---

[3]No tax receipts for either Tract 2 or Tract 3 appear in the record.

possession of" 3(b) and 3(e) since 1938. The affidavit is silent on 3(c) and 3(d).[4] Warner states that his family had a house where they lived on the disputed land "for a considerable period of time" and that several of his siblings "were born and reared on the challenged property," although he does not state when that was or whether anyone lives there now. Warner also attests that his family has long paid ad valorem taxes to the county on the disputed land (although no tax receipts can be found in the record) and that they have made various uses of it (cutting timber, leasing oil and gas rights, farming, making "improvements").

¶7.     The asserted chains of title are supported by Poe and Warner by way of photocopies of various documents, characterized in their motion for summary judgment as follows:

| | |
|---|---|
| Exhibit K | "a compilation of conveyances from the records of the Chancery Court of Calhoun County, which was prepared by the clerk's office in 1992." |
| Exhibit L | "documents evidencing tax sales from the Office of the State Auditor." |
| Exhibit M | "documents obtained from the Mississippi Secretary of State." |
| Exhibit N | "documents obtained from the archives of the State of Mississippi." |

None of these photocopies is notarized or accompanied by any affidavit attesting to its authenticity or origin, except for those in Exhibit M, which are certified by the Secretary of State's office.

¶8.     The final evidence presented by Poe and Warner is the affidavit of Larry Winter, an heir to the Poe estate. Winter's affidavit claims that "the L.F. Poe Estate and its predecessors in title have been in continuous possession of the questioned land . . . since 1878," making uses of it similar to those asserted by Warner. Winter's mother "continues to live on the property in a house originally constructed before her birth in 1917." Winter also asserts that ad valorem taxes have been paid on the land since 1878.

## B. EVIDENCE OF THE BOARD'S CLAIM

[4]The Board's challenge to the admissibility of portions of the affidavits will be discussed infra, where Poe and Warner actually rely upon those portions.

¶9.     The Board's evidence includes affidavits by Ottis B. Crocker, Jr., an attorney hired by the Board to research the title to the disputed tracts. Crocker found no title to 2(c) earlier than the 1919 deed from Armstrong to Shipp, and no title to 2(a-b) earlier than the 1924 conveyance from J.F. Poe to L.F. Poe. As for Tract 3, Crocker found that title to 3(a) was conveyed from Beadles to Stewart Warner on February 27, 1890, and that all of Tract 3 was conveyed by forfeited tax land patent from the State to A.V. Warner in 1938.

¶10.    The Board also presented three other affidavits. Rebecca Prewitt, 16th Section Land Administrator for the Board, attested that no one other than the Poes and Warners claimed any ownership interest in any 16th Section lands in Calhoun County south of the Chickasaw-Choctaw treaty line. William R. Presson, an attorney, attested that he had carefully examined the Legislature's session laws from 1833 to 1869 and found no indication that the Legislature had ever authorized Calhoun County or Yalobusha County (which contributed land to the new Calhoun County when it was formed in 1852) to sell any 16th Section lands in fee simple. Nor was there any general statute permitting the sale of 16th Section lands. And Dewitt Spencer, the superintendent of the Calhoun County schools and the custodian of school records, attested that his records showed no divestiture of title to the disputed lands. In his memorandum opinion, the chancellor did not consider the tracts and parcels individually, but rather premised his findings on the proposition that

> the documentary evidence reveals that the defendants and their predecessors have paid taxes on and have been in open, hostile and continuous possession of Tract two since the 1870's. The Warner defendants has [sic] been associated with Tract three in a similar fashion. Under these circumstances, . . . the Court must presume there was a grant.

The chancellor summarily rejected the Board's arguments.

5

¶11. A final judgment was entered March 6, 2000, and the Board moved to challenge that judgment, questioning the sufficiency of the evidence (M.R.C.P. 52(b)), seeking to amend the judgment (M.R.C.P. 59), and asking for a stay of proceedings to enforce the judgment (M.R.C.P. 62). On December 20, 2001, the chancellor denied the requested relief in an opinion that set forth the court's reasoning at greater length. With regard to the issue of insufficient evidence, the chancellor ruled that the Board had waived any issue on this point when it stipulated that "the subject civil action primarily involves a question of law, and that the contested issues between the parties would be appropriate for resolution through Summary Judgment." The chancellor further found that, alternatively, "Warner and Poe presented ample probative and unrebuked evidence for this Court to quiet title in their favor by way of summary judgment."

## STANDARD OF REVIEW

¶12. Poe and Warner vigorously argue that the standard of review in this case requires deference to the chancellor's findings of fact. However, this Court has clearly held that it "reviews errors of law, which include summary judgments and motions to dismiss, de novo." *City of Jackson v. Perry*, 764 So. 2d 373, 376 (Miss. 2000). *See also* *Miss. Dep't of Wildlife, Fisheries & Parks v. Miss. Wildlife Enforcement Officers' Ass'n, Inc.*, 740 So. 2d 925, 929-30 (Miss. 1999) (reiterating de novo review of chancellor's summary judgment).

¶13. The chancellor's memorandum opinion notes that "[b]oth the Plaintiff Board of Education and the individual landowner Defendants have filed a Motion for Summary Judgment." It appears, therefore, that the chancellor decided this case on summary judgment, and the de novo standard of review should be followed in this case.

## DISCUSSION

6

## I. Whether Poe and Warner and/or their predecessors in title adversely possess the disputed lands?

¶14. Several arguments are contained within this issue. The Board argues that Poe and Warner presented inadequate proof of any movement of title from the State to private owners during the 1871-78 window, insofar as they offered only "mere skeletonized abstracts" as proof. Because the Board has challenged the adequacy of such evidence, we consider whether the abstracts were properly before the trial court, and then address the case law regarding the abstracts' probative value.

### A. Admissibility of unauthenticated abstracts

¶15. In its response to Poe and Warner's motion for summary judgment, the Board had this to say about the photocopied record exhibits:

> the defendants relied upon: documents marked Exhibits "A" through "H" which purport to be outlines of alleged conveyances for designated quarter sections, but which fail to identify the section, township, and range for which the conveyances pertain, and are otherwise unsworn; . . . documents appearing as composite Exhibit "K" which purport to be an unsworn abstract of conveyances within Section 16, Township 23, Range 8 East, Calhoun County, Mississippi and which are apparently maintained within the office of the Calhoun County Chancery Clerk . . . .

The Board also criticized the affidavits as not meeting M.R.C.P. 56(e)'s requirement that they be made on personal knowledge, since nothing in either affidavit demonstrated personal knowledge of real estate's occupation and ownership in the late 19th century. We review the exhibits and affidavits to determine whether they were admissible evidence on a Rule 56 motion.

¶16. In *Haygood v. First National Bank of New Albany*, 517 So. 2d 553 (Miss. 1987), one issue was the appellee's claim that the appellant had submitted an unauthenticated certificate of market value. *Id.* at 556. This Court stated that

> the record does not indicate that appellee objected to the form of the certificate or its sufficiency under Miss. R. Civ. P. 56. A party **must move to strike** an affidavit that

violates the rule, and if he fails to do so, he **will waive his objection** and, in the absence of "gross miscarriage of justice," the Court may consider the defective affidavit. **Brown v. Credit Center, Inc.**, 444 So. 2d 358, 365 (Miss. 1983) quoting 10 Wright & Miller, *Federal Practice and Procedure* §§ 2738, pp. 507-09 (1973).

517 So. 2d at 556 (emphasis added). In another case, this Court recently reiterated the necessity of a motion to strike:

> Hare claims the State has waived any such objection, because "[w]here the party against whom a motion for summary judgment is made wishes to attack one or more of the affidavits upon which the motion is based, he must file in the trial court a motion to strike an affidavit." **Brown v. Credit Center, Inc.**, 444 So. 2d 358, 365 (Miss. 1983). Failure to file the motion to strike constitutes waiver of any objection to the affidavit. **Travis v. Stewart**, 680 So. 2d 214, 217-18 (Miss. 1996). This Court has held that a party opposing summary judgment must be diligent. **Grisham v. John Q. Long V.F.W. Post**, 519 So. 2d 413, 415 (Miss. 1988). The State made no other objection than the one at the hearing until its argument in its brief before this Court. Therefore, we hold that since the State failed to file a Motion to Strike the Affidavits, it has thus waived any objection now.

**Hare v. State**, 733 So. 2d 277, 284-85 (Miss. 1999).

¶17. The Board's remarks do cast aspersions on the formal sufficiency of the copies, but the Board did not move to strike them, and given the repeated and express holdings of this Court on this issue,[5] we conclude that the Board did waive any objection to the unauthenticated status of the documents. No "gross miscarriage of justice" will arise from the chancellor's having considered what certainly appear to be copies

---

[5]In oral arguments, the Board quoted the following language from **Brown** to support its contention that a motion to strike is not absolutely required: "An affidavit that does not measure up to the standards of Rule 56(e) is subject to a timely motion or other objection, formal defects in the affidavit ordinarily are waived." However, these words are a quotation from a federal court. *See* **Brown v. Credit Ctr., Inc.**, 444 So. 2d 358, 365 (Miss. 1983) (quoting **Auto Drive-Away Co. of Hialeah, Inc. v. Interstate Commerce Comm'n**, 360 F.2d 446 (5th Cir. 1966)). The words of *this* Court's opinion in **Brown** are crystal clear: "Where the party against whom a motion for summary judgment is made wishes to attack one or more of the affidavits upon which the motion is based, he **must** file in the trial court a **motion to strike** the affidavit." ***Id.*** (emphasis added). While this Court often looks to federal courts' interpretations of the Federal Rules of Civil Procedure for guidance, this Court's explicit requirement regarding the Mississippi Rules takes precedence over parallel federal practice.

of genuine documents, and the Board does not argue that any fraud has been perpetrated by the Poe and

Warner's submission of the copies in question.

## B. *Probative value of the abstracts*

¶18.    The Board also argues that the abstracts do not suffice to meet the Poe and Warner's burden of

proof that the tracts actually were conveyed by the State during the window period.

¶19.    In *Creekmore v. Neshoba County*, 216 Miss. 589, 63 So. 2d 45 (1953), this Court held that:

> Appellants relied upon 1874 deeds from a tax collector to W. P. Sanders, upon
> subsequent, apparently unlimited conveyances from other persons to appellants'
> predecessors in title, and upon the case of *Jones v. Gulf Refining Co.*, 1948, 202
> Miss. 705, 32 So. 2d 435, 34 So. 2d 735. These deeds are not in the record. We do not
> know their provisions. The record only shows a skeletonized abstract of them, grantor and
> grantee, date, and book and page of recording. The *Jones* case is of dubious value as a
> precedent in the light of all of the other decisions of this court interpreting Section 6596
> [adverse possession of 16th Section land; current Miss. Code Ann. § 29-3-7], but even
> under the rules stated in it the chancellor was warranted in finding that appellants had
> wholly failed to meet their necessary burden of proof.

216 Miss. at 593, 63 So. 2d at 46.  Poe and Warner do not discuss *Creekmore*, but they cite the *Jones*

case denigrated in *Creekmore*:

> The authorities abundantly prove that, in favor of long possession, almost every variety of
> written evidence of title will be presumed. The defective links in the chain of title will be
> supplied by presumption, and the title declared perfect, where the possession has been
> continued for a great length of time without interruption. The statute of limitations is but a
> recognition of the same principle, differently applied. We are not required by the state of
> the case to apply the doctrine of presumption, arising from lapse of time. All presumptions
> are in favor of the possessor; none against him.

*Jones v. Gulf Ref. Co.*, 202 Miss. 705, 710-11, 34 So. 2d 735, 735-36 (1948) (quoting *Grand Gulf

R.R. & Banking Co. v. Bryan*, 16 Miss. 234, 279 (1847)), *aff'g on reh'g Jones v. State*, 202

Miss. 705, 32 So. 2d 435 (1947)).

¶20. Such a blanket endorsement of the presumption that possession implies title will not suffice to rebut an authority so directly on point as that of *Creekmore*, in which just the sort of "skeletonized abstracts" that the case at bar presents were specifically held inadequate. Without the abstracts, there can be no evidence that the property was actually occupied during the period in question. The affidavits of Warner and Winter will not serve to demonstrate that the property was occupied by predecessors in title during the 1870s and 1880s, because on that question the affidavits are not attesting to facts within the personal knowledge of the affiants. *See* M.R.C.P. 56(e) ("affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matter stated therein").

¶21. The rest of Poe and Warner's argument on this point addresses the presumption of grant, which is a separate issue from whether they have actually demonstrated that title passed during the period before 1890 when adverse possession against the State was possible.

¶22. Another problem for Poe and Warner's argument is that the 1871 statute authorizing sales of 16th Section lands did not do so unconditionally, but rather by way of authorizing the school directors to conduct an election in any township as to whether that township's 16th Section lands should be sold, with a majority vote being required to put them up for sale. Miss. Code of 1871 § 2015, *repealed by* 1878 Miss. Laws Ch. 14, § 64; *see* **Burkley v. Jefferson County**, 213 Miss. 836, 847, 58 So. 2d 22, 26 (1952). No evidence has been offered that such an election was ever conducted in Township 23, that which includes the disputed lands. The evidence thus leans against Poe and Warner.

¶23.    They, however, argue that under Miss. Code Ann. § 29-3-7 (Rev. 2000),[6] the Board has the burden to affirmatively show that there was no election held:

> The showing thus made by appellee [the county] is one negative in its nature, whereas it was distinctly held in *Yazoo & M. V. R. Co. v. Bolivar County*, 146 Miss. 30, 111 So. 581, that the showing to displace the curative effect of the twenty-five years' statute must be an affirmative showing that there was no valid sale or lease. The force of the twenty-five years' statute is such that it will support the presumption that the order appointing appraisers "was in fact made but that by some inadvertence it failed to be recorded." *Hawkins v. City of West Point*, Miss., 27 So.2d 549, 550.

*Foster v. Jefferson County*, 202 Miss. 629, 637, 32 So. 2d 126, 129 (1947) (holding that absence of order appointing appraisers in county's minutes will not overcome § 29-3-7).

¶24.    However, the *Foster* holding does not apply to adverse possession statutes in general, but to the particular language of presumption in § 29-3-7. Poe and Warner's argument hinges on that statute's having application before 1890, when the new state constitution forbade adverse possession against the State. Hence, the land would have to have been adversely possessed for 25 years before 1890, that is, since 1865. But since the school lands could have been sold in fee simple only from 1871 to 1878, it is not possible that the presumption "that the law authorizing the disposition of the lands has been complied with" could have arisen, since no such law existed before 1871, and $1871 + 25 = 1896$, not 1890.

¶25.    But this reading of the statute in conjunction with our Constitution appears to contradict *Foster*, in which the facts were thus: school district conveys land in 1875; purchasers remain in possession over 70 years; hence, the 25-year requirement for a presumption of legal grant is met. *Foster*, 202 Miss. at 635, 32 So. 2d at 128. *Foster* did not even consider the effect of § 104 of the 1890 Constitution on the

---

[6]That section reads in full: "Adverse possession for a period of twenty-five years, under a claim of right or title, shall be prima facie evidence in such case that the law authorizing the disposition of the lands has been complied with and the lease or sale duly made. If the claim be under a lease, the time at which the lease expires shall be fixed by the court."

predecessor statute to § 29-3-7. There is no question today that § 29-3-7 does not apply to permit adverse possession against the State after the enactment of the contrary constitutional provision. *Morrow v. Vinson*, 666 So. 2d 802, 805 (Miss. 1995). To the extent that *Foster* holds otherwise, it is overruled.

¶26. There is merit to the Board's argument that the skeletonized abstracts and the other evidence submitted by Poe and Warner will not support a finding that the State actually conveyed the tracts during the pre-1890 window of opportunity. Adverse possession claims will not be sustained with inadequate evidence, *Holliman v. Charles L. Cherry & Assocs., Inc.*, 569 So. 2d 1139, 1146-47 (Miss. 1990), and the parties asserting adverse possession have the burden of proof. *Gadd v. Stone*, 459 So. 2d 773, 774 (Miss. 1984). The chancellor's finding of adverse possession on the evidence in the record was reversible error.

**II.     Whether the presumption of grant acts to quiet title on behalf of Poe and Warner?**

¶27. If Poe and Warner were unable to demonstrate adverse possession of the disputed tracts, their final resort is to the doctrine of presumed (lost) grant. However, this discussion cannot possibly apply to Tract 3. That land, on the Warners' own account, was possessed by the State in 1938 when a tax patent was issued to A.V. Warner. That deed, unlike so many others in this case, is reprinted in the record, as is the next conveyance in 1973 to James Sidney Warner, one of the present parties. There is thus no gap in title to be addressed. Flatly, the Tract 3 land in question was illegally conveyed by the State in 1938, in contradiction of section 211 of the 1890 Constitution.

¶28. As for Tract 2: Poe and Warner rely heavily on *Board of Trustees of Monroe County Board of Education v. Rye*, 521 So. 2d 900 (Miss. 1988), which was specifically relied upon by the chancellor

12

in this case. In *Rye*, which did not involve 16th Section or lieu land, this Court explained the doctrine of

the presumption of grant:

> This Court has held that **continuous peaceable possession of land, when accompanied by the usual acts of ownership, will raise the presumption that the land has been granted to the possessor by the State**, even where the claim is asserted against the State. Payment of taxes on land is considered an act of ownership in this context.
>
> This doctrine of presumption of grant is not precisely synonymous with adverse possession, though the two are "indissolubly linked." **Where adverse possession can be shown, the doctrine of presumption of grant has no application.** The purpose of the doctrine is to quiet title after long possession; its applicability depends upon possession "under a claim of right, actual, open, and exclusive, and a chain of conveyances and payment of taxes are important." The greatest practical difference between adverse possession and the doctrine of presumption of grant is that **the latter allows assertions of claims against the sovereign, despite statutes barring adverse possession against the State**. It is readily apparent, then, that application of the doctrine of presumption of grant to the facts of the instant case is especially appropriate.
> . . . .
> There is no evidence that the school board ever parted with the title it acquired from Sullivan in 1867. But title must have passed from the school board to a private person prior to the 1878 tax sale, else the property would not have been subject to such a sale. The open and continuous possession of the subject property by appellees and their predecessors for the previous 93 years (1892-1985), is enough to raise a presumption that there was at some time a grant from the sovereign sufficient to support the title they now assert.

*Id.* at 906-07 (citations omitted & emphasis added). This Court, in other words, held that merely

possessing land for a very long time is enough to establish a presumption that at some past time, adequate

title was acquired. However, this Court in *Rye* also qualified that holding with the phrase "when

accompanied by the usual acts of ownership."[7]

---

[7]Another very great advantage of the presumed grant argument, in view of the questionable written evidence relied upon by Poe and Warner, is that *Rye* states "the very purpose of the doctrine [of presumptive grant] is to remedy the *absence* of written evidence of some kind from the State." *Id.* at 907 (noting, however, that in *Rye* "written evidence" did indeed exist). This language, in contrast to the discussion of adverse possession in *Creekmore*, would appear to indicate that even sketchy written

¶29. The Board and the State[8] argue that payment of taxes is no indicator of ownership where 16th Section land is concerned, because such taxes are required to be paid by leaseholders just as by holders in fee simple. The authority for this assertion seems to be Miss. Code Ann. § 29-3-71 (Rev. 2000), which provides that 16th Section lands are liable to taxation after they are leased. This Court has interpreted that statute to mean that "school lands are not liable for general taxation as long as they remain unleased, but following their lease, the leasehold is liable for taxation. The lessee, not the county, is liable for general taxation." *Turney v. Marion County Bd. of Educ.*, 481 So. 2d 770, 782 (Miss. 1985). Therefore, payment of taxes is not a clear "act of ownership" in the context of 16th Section lands.

¶30. The State, along with the Board, both argue further that 16th Section lands are not subject to the doctrine of presumptive grant. They point to the language in *Rye* that distinguished the facts before the Court from a 16th Section case: "The subject property [in *Rye*] was not 16th section land, nor was it lieu land. **This sale is distinguished from tax sale of 16th section land and cases discussing such sales.**" *Rye*, 521 So. 2d at 904 n.1. (emphasis added). The State and the Board deny that this Court has ever applied presumption of grant to a 16th Section case. However, this Court has not ruled that presumption of grant is *in*applicable. In the case which the Board and the State agree should control on the present facts, this Court stated:

> The reason that there was no grant, deed or patent to the 80 acres in question (E ½ of SE 1/4 of Section 16, T.8, R. 14 E.) could very well be because a petition against the sale was filed by "a majority of the inhabitants" of the township in which this 80 acres was situated. This reasoning is supported by the fact that other portions of this particular 16th Section

---

evidence is not to be excluded, since the doctrine could be applied even in the absence of any written evidence.

[8]Although not a party to this suit, the State, by and through the Secretary of State and the Attorney General, filed an amicus curiae brief.

surrounding this 80 acres were promptly sold under the special provisions of the Act of 1854. The NE 1/4 of Section 16, Township 8, Range 14 East, was sold at public auction on July 17, 1854, to O. S. Mason, and the deed executed on August 9, 1854, was promptly filed for record on August 23, 1854. In our opinion, there should be no presumption of lost grant **under the facts of this case**.

***Gibson v. State Land Comm'r***, 374 So. 2d 212, 217 (Miss. 1979) (emphasis added). In ***Gibson*** this Court did not take an obvious opportunity to state whether the presumption of lost grant was inapplicable to 16th Section lands, which would suggest that no rule against the presumption's application existed at the time. While the State and Board are correct that ***Rye*** did not decide the question in favor of applying the presumption to 16th Section lands, they overspeak in claiming that ***Gibson*** decided the question in the other direction. ***Rye*** simply reserved the question for another day.

¶31.     The statute enabling the outright alienation of 16th Section land by the State, as discussed under Issue I above, required that an election be held to approve the sales of such lands, and there is no evidence that such an election was held. Poe and Warner argue that the fact of an election's being held with an affirmative result is another inference to be made upon the presumption of grant.

¶32.     We conclude that the facts of this case stretch the doctrine of presumptive grant to the breaking point. It is possible, indeed, that title was passed during the window period in the 1870s, but it is equally possible that no such title passed, but rather only a lease interest. As ***Gibson*** found, it "could very well be" the latter as much as the former. Parts 2(b), 3(b), 3(c), 3(d), and 3(e) are not even definitely alleged to have been conveyed during the window period. As for the other conveyances, Poe and Warner supply only "skeletonized abstracts" and scarcely legible photocopies which are inconclusive as to the exact interest conveyed, fee simple or leasehold, and the authority to do so.

¶33.     In ***Rye***, this Court apparently had before it in the record actual copies of most of the title deeds; this can be inferred by the fact that, in two places where no deed appeared in the record, the Court noted

15

the fact. *Rye*, 521 So. 2d at 903 ("This deed does not appear in the trial record."). In the present case, by contrast, Poe and Warner ask the Court to supply not only a few gaps, but virtually the entire basis for title, by presumptions and inferences. The powerful equities in favor of equating continuous and peaceable possession with ownership, cited in *Rye*, *id*. at 908, are in the present case countered by the no less powerful equities in favor of the State's constitutional and statutory duty to preserve 16th Section land in trust for its schoolchildren. These latter equities, as noted above, were not considerations in *Rye*, which specifically excluded 16th Section lands from the scope of its holding.

¶34.　　On the facts of this case, we hold that the presumption of lost grant is inapplicable due to the extensive chain of inferences required to so hold (i.e. that the missing deeds existed; that they conveyed fee simple, not leasehold, interests; that the deeds were authorized by an election according to statute). Further, we hold that the holding of *Rye* should be specifically limited to exclude application of the presumption of lost grant to 16th Section lands. A common law presumption should not be used to defeat a constitutional and statutory interest in, and duty towards, the lands held in trust for the schoolchildren of Mississippi. Thus, the chancellor erred as a matter of law on this issue.

### III.　　Whether the State of Mississippi should have been joined as a necessary party?

¶35.　　The State, echoed by the Board, argues that the chancellor committed reversible error in failing to find that the State should have been joined as a necessary party. The chancellor found that Miss. Code Ann. § 29-3-3 (Rev. 2000), which authorizes boards of education '"to institute and prosecute . . . all necessary suits to establish and confirm the title to each parcel" of 16th Section land, served to make the State "already a party through its agent, the Board." This position seems to be supported by this Court's reasoning in interpreting § 29-3-3's predecessor statute in the 1906 code:

16

A county is a political subdivision of the state, created for the purpose of acting for the state in local matters, whose powers are exercised by a board of supervisors. The state, in thus dealing with sixteenth section land, acts through one of its own, and most appropriate, governmental agencies. **For such purposes, and within the power conferred upon it, the county is the state.**

*Jefferson Davis County v. James-Sumrall Lumber Co.*, 94 Miss. 530, 49 So. 611, 612 (1909)

(emphasis added) (construing § 4701 of 1906 code). Further, this Court has stated: The State argues that its power as trustee makes it an indispensable party:

The State, as trustee, may not divest itself of its duties. However, the State, by statute, may vest in others the authority to do acts which the trustee cannot practicably be expected to perform. *Restatement (Second) of Trusts* §§ 171 (1959). The State, as a matter of practical necessity, manages its sixteenth section trust property through local county boards of education. As Miss. Code Ann. §§ 29-3-1 relates, "The board of education . . . shall have control and jurisdiction of said school trust lands and of all funds arising from any disposition thereof heretofore or hereafter made." The charge of the statute is that Boards of Education manage the school trust lands "as trust property" and "assure that adequate compensation is received." Even though the State has vested in the local boards of education certain management powers and duties, **the State at all times holds the fee as trustee** and maintains the authority and responsibility to oversee the management of the trust and to assure that the trust is properly executed.

*Turney*, 481 So. 2d at 777 (emphasis added). The State argues that, as fee-holder, it cannot be divested of its title and trust without being made a party.

¶36. In so arguing, the State asks this Court to limit or overrule its holding in *Board of Supervisors, Adams County v. Giles*, 219 Miss. 245, 68 So. 2d 483 (1953). In *Giles*, alluvial lands were in dispute, and this Court stated:

The fourth contention is that the agreements were void because the land commissioner was not a party to them. Now it is true that, under Section 6598, Code of 1942, "The boards of supervisors, under the general supervision of the land commissioner, of the several counties wherein are situated any sixteenth section school lands or lands in lieu thereof, shall have jurisdiction and control of said school lands and of all funds arising from any disposition thereof heretofore or hereafter made; * * *." But, by Section 6594, Code of 1942, the authority "to ascertain the true condition of the title and to institute and prosecute * * * all necessary suits to establish and confirm the title * * *." to Sixteenth Section land was delegated to, and the responsibility therefor rests solely on, the board of supervisors. Hence the land commissioner was not a necessary party to these agreements.

17

*Id.* at 261, 68 So. 2d at 488-89. The State proposes that this holding "is inconsistent with the powers and responsibilities given the State as trustee of 16th Section Lands in *Turney*." The State also urges that the 16th Section Land Reform Act of 1978, i.e. §§ 29-3-1 et seq., changed the conception of the Secretary of State's role regarding 16th Section lands, so that the State's participation through that office should be required.

¶37. Because Poe and Warner do nothing more in their brief than reiterate the chancellor's invocation of § 29-3-3, the argument before this Court is a bit lopsided. Nevertheless, we agree that the State is correct that it is the ultimate fee-holder of 16th Section lands, and that it is therefore a necessary party to any action that might forever divest it of title in those lands. The language in *James-Sumrall Lumber Co.* should be read narrowly, so that "the county is the state" only within the narrow limit of being empowered to file suits, but not so broadly as to make it the sole necessary defender of the State's fee title wherever that is challenged. In the present action, the Board filed a complaint to quiet and confirm title. When Poe and Warner counterclaimed for clear title on their behalf, the suit became one that endangered the State's interest in protecting its asserted title to 16th Section lands. (It would be impractical, of course, to say that the State's interest is endangered only where it actually *has* title to such lands, since the question of title vel non is the very matter in dispute.) At that point, the issue went beyond merely the Board's power to file suit, and the State became a necessary and indispensable party.

¶38. This Court has held that failure to join interested parties in a real estate dispute under M.R.C.P. 19(a) justifies reversal and remand as a violation of fundamental due process. *Aldridge v. Aldridge*, 527 So. 2d 96, 98 (Miss. 1988); *see also Magnolia Textiles, Inc. v. Gillis*, 206 Miss. 797, 807, 41 So. 2d 6, 8 (1949) ("as a general rule all persons who are materially interested in the event or subject matter, without whom no effective judgment or decree can be rendered, should be made parties, in a suit

18

to quiet title"). Although the Board did not raise this issue until after the chancellor entered judgment in the case, failure to join necessary parties may be raised on appeal and even by the appellate court sua sponte. *Shaw v. Shaw*, 603 So. 2d 287, 293-94 (Miss. 1992) (following federal precedents applying federal counterpart to our Rule 19).

¶39.    We conclude that the chancellor committed reversible error by not joining the Secretary of State as a necessary and indispensable party in the action to quiet and confirm title, once Poe and Warner had counterclaimed to quiet and confirm title on their own behalf.

### CONCLUSION

¶40.    The chancellor erred with respect to Poe and Warner's adverse possession of the subject properties, since there is insufficient evidence that prior to 1890 any ownership interest existed to be adversely possessed, and since 1890, Section 104 of the Mississippi Constitution has forbidden adverse possession against the State. Further, the doctrine of presumptive grant is not applicable or proper in this case, thus title to Tracts 2 and 3 of this 16th Section property continues to be held by the State in trust. Tract 3 could not be saved for Poe and Warner by presumption of grant, since the chain of title from the State to the Warners is entirely post-1890 and thus falls within the period wherein no alienation of 16th Section land was constitutional. Finally, the Secretary of State should have been joined as a necessary party. For all the reasons thus stated, we reverse the chancery court's judgment, and we remand this case for entry by the chancery court of an appropriate judgment, consistent with this opinion, which (1) quiets and confirms title to Tracts 2 and 3 in fee simple in the State of Mississippi in trust for the use and benefit of its public schools; (2) finally dismisses with prejudice the counterclaim of Poe and Warner; and (3) assesses all costs against Poe and Warner.

¶41.    **REVERSED AND REMANDED.**

19

**SMITH, P.J., WALLER, DIAZ, EASLEY, CARLSON AND GRAVES, JJ., CONCUR. PITTMAN, C.J., CONCURS IN RESULT ONLY. McRAE, P.J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.**